**OLD TIME ENTERPRISES, INC.,**
**Plaintiff–Appellant,**

v.

**INTERNATIONAL COFFEE**
**CORPORATION, et al.,**
**Defendants–Appellees.**

**No. 87–3293.**

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1989.

---

Louis R. Koerner, Jr., New Orleans, La., for plaintiff-appellant.

Douglas S. Draper, Friend, Wilson, Spedale & Draper, New Orleans, La., for Intern. Coffee, Madary, Browning & Spuhler.

R. Patrick Vance, Robert B. Bieck, Thomas K. Potter, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Nottebohm and Pimentel.

Eugene R. Preaus, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Fidelity & Deposit.

Before CLARK, Chief Judge, and GOLDBERG and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Old Time Enterprises, Inc. (OTE), a debtor in possession under Chapter 11 of the Bankruptcy Code, appeals the dismissal pursuant to Fed.R. Civ.P. 12(b)(6) of its action for civil damages for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and the remand to the bankruptcy court of its pendent state law claims. We modify and affirm.

**Facts and Proceedings Below**

OTE is a Small Business Administration certified minority enterprise that roasts and packages coffee for government contracts. These contracts require a blend of Brazilian and Colombian coffee. Coffee purchases in these countries apparently are controlled by nationwide cartels, which set prices, quotas, and discounts. These cartels either sell to registered roasters exclusively or offer significant price incentives solely to roasters.

Defendant-appellee International Coffee Corporation (ICC) is an importer and broker of green (*i.e.*, unroasted) coffee and was OTE's exclusive agent for purchasing coffee from "early 1985" until March 1986. When OTE received a solicitation to bid on a government contract, OTE would notify ICC, which would provide a firm offer to sell OTE the necessary coffee at a set price. At some point, either before quoting a price to OTE or after OTE was notified that it had received the contract, ICC purchased the coffee and registered the purchases with the cartels in OTE's name. Not all of the coffee purchased by ICC in OTE's name was actually sold to OTE. ICC received payment from OTE when OTE received payment from the government agencies.

ICC also leased equipment and provided some financing to OTE, which was by its own admission undercapitalized from the start. In January 1986, ICC became more extensively involved in financing OTE after the failure of the bank with which OTE had a line of credit. ICC agreed to purchase about eight percent of OTE stock and to provide a $100,000 line of credit secured by assignment to ICC of the accounts receivable on eight government contracts. On March 13, 1986, ICC cancelled OTE's line of credit and on March 26, 1986, OTE filed for relief under Chapter 11.

The day after OTE filed its bankruptcy petition, ICC obtained a temporary injunction from the bankruptcy court that prohibited OTE from selling coffee or disposing of the government contract proceeds that secured the line of credit. On April 2, 1986, the bankruptcy court entered a temporary injunction ordering OTE not to dispose of funds assigned to ICC under a September 6, 1985 assignment agreement. As a result of these injunctions, OTE ceased operations.

On April 16, however, the parties entered into an agreement under which ICC agreed to supply operating capital and coffee, and OTE resumed operations and agreed to

turn over certain monies and to assign certain accounts receivable to ICC. Although approved by the bankruptcy court on April 22, the agreement was short-lived. On April 24, ICC refused to advance additional funds or coffee because, claimed ICC, OTE had breached the agreement. The bankruptcy court held a hearing and, on May 28, set aside the April 16 agreement on the ground of mutual mistake. An initial appeal by ICC to the district court was remanded in December 1986 because the bankruptcy court had not entered judgment on a separate document as required by Bankruptcy Rule 9021. Following this remand, the bankruptcy court entered substantively the same order (though this time complying with Rule 9021) in April 1987, and on ICC's appeal, the district court in August 1987 reversed and remanded the bankruptcy court's decision. OTE has appealed that order to this Court and we recently dismissed the appeal, holding that the district court's judgment of remand was not a final one for purposes of 28 U.S.C. § 158(d). *See Old Time Enterprises, Inc. v. International Coffee Corporation*, No. 87–3652 (5th Cir. December, 1988) (unpublished).

On July 23, 1986, shortly after the bankruptcy court's decision setting aside the April 16 agreement, OTE filed the present action against ICC; William B. Madary, president of ICC; and Michael L. Browning, controller and treasurer of ICC and a former member of OTE's board of directors. OTE sought damages for violations of RICO, 18 U.S.C. §§ 1962(a), (b), (c), (d), 1964(c), and state law. The gist of OTE's RICO claim is that ICC overcharged OTE, used OTE's registration to purchase coffee that was sold to others, and acted fraudulently with regard to the bankruptcy proceeding, particularly the securing of the injunctions. On August 25, 1986, defendants moved for a more definite statement of OTE's RICO allegations. The district court granted defendants' motion on October 2, 1986, and entered in this case its "Standing Order: Cases Under RICO, 18 U.S.C. § 1961–1968" (Standing Order), which set forth specific pleading requirements. On October 27, 1986, OTE filed a

case statement (fifty-two pages, including exhibits) in response to the Standing Order, and on November 26, 1986, OTE filed, with permission from the district court, its first amended complaint. This complaint, filed after substantial discovery between the parties, added as defendants Clifford L. Spuhler, secretary of ICC; Carlos L. Nottebohn, chairman of the board of ICC; Jose de Barros Pimentel and Import e Export, S.A., ICC's Brazilian agents; and Fidelity & Deposit Insurance Company (Fidelity), the surety in ICC's initial appeal to the district court in the bankruptcy proceeding. The amended complaint is ninety-three pages long (including exhibits, among which is the case statement).

On January 28, 1987, Nottebohn filed a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), which defendants ICC, Madary, Browning, and Spuhler joined. On February 3, the district court withdrew reference to the bankruptcy court of the adversary proceeding involving the parties. On February 8, the surety filed a motion for summary judgment, arguing that the bond was no longer in effect. On March 26, 1987, the district court granted the motions for summary judgment and to dismiss the RICO claim, remanding the remaining claims to the bankruptcy court. Concerning the RICO claim, the court tersely stated:

"We decline to waste scarce judicial resources upon a detailed discussion of plaintiff's RICO claim. Suffice it to say that what is involved is an ordinary contract dispute which can and should be tried as an adjunct to the bankruptcy proceeding. Analysis of plaintiff's complaint, amended complaint, and 'compliance' with the court's standing RICO order demonstrates conclusively that plaintiff's attempt to characterize the transactions between the parties as involving fraud and other criminal activity falls woefully short."

OTE then moved for reconsideration and to file a second amended complaint. The district court denied these motions and this appeal followed.

## Discussion

### I. The Standing Order

OTE argues that the Standing Order requiring specific factual allegations violated Fed.R.Civ.P. 8(a) and 83. Rule 8(a) sets forth the general pleading requirement of "a short and plain statement of the claim"; Rule 83 provides for promulgation of local court rules and orders that regulate local practice in any manner not inconsistent with the federal or local rules. OTE argues that the pleading requirement of the Standing Order is inconsistent with Rule 8(a) and is not a properly promulgated local rule.

■ OTE, however, misconstrues the district court's order. The Standing Order was entered in this case in response to a Rule 12(e) motion for more definite statement. Rule 12(e) orders are reviewed under an abuse of discretion standard. *See generally* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.18[1] (1987). OTE claims fraudulent conduct by defendants as a basis for its RICO claim. Rule 9(b) requires fraud to be pleaded with factual specificity and the district court properly sought to enforce this rule. The district court's order also properly sought to enforce the requirements in Rules 8(a) and 8(e)(1) of a "short and plain statement of the claim" and that "pleadings shall be simple, concise and direct," which apply to fraud allegations along with Rule 9(b). *See Corwin v. Marney, Orton Investments*, 788 F.2d 1063, 1068 n. 4 (5th Cir.1986). Furthermore, considering the requirements to state a RICO claim, which we discuss below, the district court did not err in requiring a more specific, clear, and direct statement of the RICO claims. Thus, the district court did not abuse its discretion.

### II. RICO

■ Section 1964(c) provides a RICO plaintiff with a civil action to recover treble damages for injuries caused by a violation of section 1962. A violation of section 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 424 (5th Cir.1987) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). These are separate requirements. An "association in fact" enterprise, section 1961(4), requires an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure. *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440–41 (5th Cir.) (per curiam), *cert. denied,* — U.S. ——, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987); *Delta Truck & Tractor, Inc. v. J.I. Case*, 855 F.2d 241, 243 (5th Cir.1988). A pattern of racketeering activity is at least two predicate acts of racketeering activity (an indictable act under one or more various specified laws, mostly federal criminal provisions including mail and wire fraud, 18 U.S.C. § 1961(1)(B)) that show "continuity plus relationship" with the legitimate business. *Cowan v. Corley*, 814 F.2d 223, 226–27 (5th Cir.1987). An enterprise, however, "is not a 'pattern of racketeering activity,' but must be 'an entity separate and apart from the pattern of activity in which it engages.'" *Montesano*, 818 F.2d at 427. The violator of section 1962(c) who commits the pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted. *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122 (5th Cir. 1986). When the alleged section 1962(c) violator is a legal entity, such as a corporation, this required separation is not established merely by showing that the corporation, through its employees, officers, and/or directors, committed a pattern of predicate acts in the conduct of its own business. *Atkinson*. Nor does the fact that individual officers and employees of a corporation, in the course of their employment associate together and commit in the conduct of the corporation's business a pattern of predicate acts in its name and on its behalf, suffice to constitute such officers and employees (alone or together with the corporation itself) an association in fact enterprise distinct from the corporation. *Id.* And, in *Montesano* we also explained that a RICO plaintiff must plead specific

facts that establish an association that exists other than merely to commit the predicate acts that show pattern. 818 F.2d at 427. Finally, a proximate causal relation must exist between the RICO predicate acts and the plaintiff's damages. *Zervas v. Faulkner*, 861 F.2d 823, 832–34, (5th Cir. 1988).

### III. Dismissal of OTE's RICO Claim

The district court dismissed OTE's RICO action for failure to properly state a claim, not as a punitive or disciplinary sanction for failing to comply with the Standing Order. However, the Standing Order did serve OTE with notice of the requirements for pleading a RICO claim in accordance with the relevant substantive and procedural rules. The issue we address is, accepting as true all of OTE's allegations, did OTE properly state a claim for relief under RICO?

■■■ It is perhaps not impossible that a RICO claim may lie hidden or buried somewhere in OTE's complaints and the Standing Order case statement. OTE's pleadings do not unequivocally negate such a possibility. However, they also do not state a RICO claim against defendants with sufficient intelligibility for a court or opposing party to understand whether a valid claim is alleged and if so what it is.

We look first to OTE's first amended complaint, which was filed after substantial discovery and the entry of the Standing Order. The following are examples of the deficiencies. Included in OTE's list of the relevant RICO "enterprises" is: (1) "[a]n association of some or all of" ICC and "its defendant directors, officers and employees"; (2) "Old Time [OTE] and/or the operating facilities of Old Time, and the 8(a) [Small Business Administration] certification [of OTE] or certain or all of benefits of Old Time under such certification"; (3) "[t]he status of Old Time [OTE] as a governmental supplier, including but not limited to the benefits of the governmental contracts"; (4) "[t]he green coffee booked by International [ICC] for specified government contracts but not yet delivered and/or roasted and packaged"; and (5) the "green

coffee contracts" and the cartels. OTE does also list ICC and the other defendants as enterprises, but makes no attempt to explain the functioning of any of these alleged enterprises. These allegations plainly fail to meet the above-referenced standards of *Atkinson* and *Montesano*. Likewise, it is evident that inanimate objects, such as coffee, or intangible rights, such as contract rights, cannot possibly constitute a RICO "enterprise," which must be either an individual or a "legal entity," such as a corporation, or an association of "individuals." § 1961(4). OTE lists as predicate racketeering acts under section 1961(1) communications that it alleges violated 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), but it does not indicate the content of the communications or how or in what manner they violated those statutes. OTE alleges that ICC's refusal and threats to refuse to furnish operating capital and coffee were violations of 18 U.S.C. §§ 1951 and 1952, but does not even attempt to describe how these acts were extortionate in violation of those statutes. OTE conclusorily asserts violations of subsections (a) through (d) of section 1962 but does not state how it was harmed by these violations. It also states at least twice that the acts violating these subsections are set forth "hereinabove, hereinafter, and otherwise." There is no explanation of anything specific that "otherwise" refers to in this context. The complaint further recites that details can be found in some unspecified place in its case statement. It is replete with such vague, confusing, and essentially meaningless cross-referencing.

OTE's case statement document fares no better for the hapless reader. The shortcomings of the complaint are not remedied. OTE's allegations against the defendants boil down to ICC's breach of its contract or contracts with OTE, or fraud practiced by ICC, and its officers or employees on its behalf, on OTE in the business relationship between ICC and OTE, and ICC's attempts "to obtain certain preferences and advantages in the bankruptcy court to which it was not entitled." The case statement divides the enterprises into "wrongdoer enterprises" and "victim enterprises" but oth-

erwise gives no helpful specifics, and the first amended complaint, filed after the case statement, lumps all asserted enterprises together in one list which includes enterprises not listed in the case statement, such as the coffee and the contract rights. Moreover, the case statement includes asserted enterprises—such as government agencies buying from OTE—not listed in the amended complaint. The vagueness in the case statement may also be illustrated by the following rather typical example:

"8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

"The patterns of racketeering activities, discussed hereinabove, and directed against plaintiff and other nominate enterprises appears likely to be behavior deviating from the usual and daily activities of the defendants, although the usual and daily activities of the corporate defendants and the resources of the corporate defendants furnish the mechanism by which the wrongful and deviant behavior was made possible and feasible of implementation."

Another such example is the case statement's wholly unexplained and never specified recitation that "[f]or various of the claims of plaintiff, the defendants are separate from the enterprise, in others, the defendants constitute or are associated with the enterprise as members, etc. thereof."

The district court thus did not err in dismissing the complaint. OTE did not even approximate the pleading requirements for an enterprise, which is central to each of the subsections of section 1962. And, there is a failure to allege facts showing the requisite nexus between the claimed RICO violations—which themselves are essentially unidentifiable—and plaintiff's claimed damages. This is particularly evident as to the asserted section 1962(a) and (b) claims, where the complaint fails to identify and describe any proximate

causal relationship between an acquisition of an interest in an enterprise, through a pattern of racketeering activity or with income derived therefrom, and the damages claimed by OTE. Moreover, the confusing and often meaningless list of asserted enterprises—such as the coffee and the contract rights—renders it impossible to determine just what is claimed as to any of the section 1962 subsections. This is particularly so considering the number, nature, and variety of the asserted enterprises (nine in the body of the first amended complaint, some being categories appearing to include more than one asserted enterprise, plus at least five other asserted enterprises listed in the appended case statement); the fact that there are some eight different defendants; the numerous unclarified generalities and conclusory allegations employed throughout the complaint; its frequent use of alternative and "and/or" allegations; and its abundant wholly general cross-referencing including repeated expressions such as "hereinabove, hereinafter, and otherwise." This defective amended complaint was filed after a motion for more definite statement, considerable discovery, and the entry of an order explaining what OTE needed to do. Nevertheless, the amended complaint wholly failed to comply with Rules 8(a) and 8(e)(1) (and 9(b)), and is essentially incomprehensible with respect to whether matters constituting valid RICO claims of OTE against the respective defendants are stated and if so what these claims are. A district court and opposing parties are not required to forever sift through such pleadings after the plaintiff has been given notice of the pleading requirements of his case. *See Friedlander v. Nims*, 755 F.2d 810, 813–14 (11th Cir.1985); *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir.1979).

 Although the district court did not err in dismissing the RICO claims, we modify the dismissal so that it is without prejudice.[1] As we have noted, the complaint does not unambiguously disclose that OTE has no RICO claim against any of the defendants. While this might not alone suf-

---

**1.** Except as to defendant-appellee Fidelity, who was not sued under RICO or otherwise than on

its supersedeas bond given in the bankruptcy appeal; as stated in part V, *infra*, summary

**1220**

fice for dismissal without instead of with prejudice—after all, a complaint must affirmatively state a claim, not merely fail to negate the existence of one—we note that RICO itself is an unusually confusing and convoluted statute as to which when this suit was filed there was not a significant established body of civil law. Much of the confusion has been alleviated by subsequent decisions of this Court, such as *Bishop, Atkinson, Montesano, Delta Truck & Tractor,* and *Zervas.* But these cases were all handed down after the amended complaint was filed, except for *Bishop* which was then very recent and probably not yet in the bound volumes of the *Federal Reporter.* We think it not unlikely that much of the confusion and incomprehensibility of the complaint stemmed from a lack of understanding of the legal elements of a RICO claim and a perhaps somewhat fervid desire to cover all even remotely conceivable theories while retaining a level of generality and indefiniteness that would mask any legal deficiencies and preclude effective challenge. That is not permissible, of course, and only leads to essentially nothing being alleged, for the needle in the haystack might as well not be there; however, given the nature of RICO and the *then* undeveloped state of the law in this Circuit, it was arguably somewhat understandable, though it would not now be. Accordingly, given the peculiar facts of this case, and the time at which the proceedings below took place, in the interests of justice we modify the dismissal so that it is without prejudice.

*IV. OTE's Second Amended Complaint*

■ OTE argues that the district court should have granted leave to file its second amended complaint tendered after the order of dismissal, arguing simply that amendments should be freely allowed. OTE's second amended complaint, however, fails to remedy the many deficiencies of the first two complaints and OTE's case statement. OTE's new antitrust allegations do not affect the deficiencies in the RICO allegations. We therefore find that the dis-

trict court did not abuse its discretion in denying OTE permission to file its second amended complaint. *See Daly v. Sprague,* 675 F.2d 716, 723 (5th Cir.1982); *Chitimacha Tribe of La. v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir.1982).

*V. The Surety's Motion for Summary Judgment*

■ Fidelity's surety bond was given to stay the execution of "judgment" pending ICC's appeal of the May 28, 1986 bankruptcy court order setting aside the April 16 agreement. That appeal was dismissed and remanded because there was no judgment. The surety was therefore discharged and the district court did not err in entering summary judgment for Fidelity.

**Conclusion**

As to Fidelity the judgment below is affirmed. As to all the other defendants-appellees, the judgment of dismissal is modified to be a dismissal without prejudice. The judgment as so modified is affirmed.

AFFIRMED AS MODIFIED.

---

judgment was appropriately rendered in Fidelity's favor on the merits and the dismissal with

prejudice of the suit against it is affirmed.