910 F.2d 1434
 RICO Bus.Disp.Guide 7527
 Stephen JENNINGS, D.C., Mary Jennings, Christine Jennings,
David Jennings, Debbie Jennings, Lon A. Kaminsky,
D.C., and Terry L. Kaminsky, Plaintiffs-Appellants,
v.
John EMRY, Linley Pearson, Patricia Alder, Kenneth Buehrle,
Dave Sylvester, Don Dombrowski, Michael A. Minglin, Thomas
G. Fisher, Aaron White, Marci Beyer, Rocky McClain, Richard
McCord, Donna Bays-Beinhart, James Martin, Steven Kelman,
D.C., John Henry Meyers, IV, Rebecca Rouch, Robert Simonson,
D.C., Ronald Kolanko, D.C., Daniel A. Lane, Richard
Hendrickson, David Miller, Scott Newman, Sheldon Breskow,
Mark Lundy, and Mark Devine, Defendants-Appellees.
 No. 89-3599.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 31, 1990.
Decided Aug. 16, 1990.
 
 Kenneth C. Kern, Kern & Associates, Indianapolis, Ind., for plaintiffs-appellants.
 Robert S. Spear, Asst. Atty. Gen., Office of Atty. Gen., David M. Haskett, Eric A. Riegner, Locke, Reynolds, Boyd & Weisell, Terrill D. Albright, Mary J. Harmon, Baker & Daniels, Indianapolis, Ind., John Emry, Franklin, Ind., Charles S. Brown, Jr., Brown & Brown, New Castle, Ind., James A. Gothard, Lawrence B. O'Connell, Gothard and O'Connell, Lafayette, Ind., James H. Ham, III, Douglas, Dormire & Powers, Fort Wayne, Ind., for defendants-appellees.
 Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). In this case, the statement in the Appellants' complaint is not short; rather, it is a lengthy 55 pages and 433 rhetorical paragraphs. The statement also is not plain; rather, it is prolix, disjointed, confusing, and at times unintelligible. And despite this length and complexity (or perhaps, in part, because of it), the complaint does not show that its pleaders are entitled to the relief they seek, relief for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68. Acting on the Appellees' Rule 12(b)(6) motion, the court below dismissed the Appellants' claims for various reasons dealing with immunity, statute of limitations, collateral estoppel, standing, and pendent jurisdiction. We affirm, but on other grounds. See Box v. A & P Tea Co., 772 F.2d 1372 (7th Cir.1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); Brown v. Brienen, 722 F.2d 360 (7th Cir.1983). We have no particular objection to the district court's method of analysis. We simply find it unnecessary to examine that method in light of the evident failure of the Appellants' complaint to adequately state a claim for relief under RICO.
 
 
 2
 RICO is a complex statute, it is true. Thus, by necessity, most RICO complaints will be somewhat complex. The necessity for complexity, however, does not give litigants license to plead by means of obfuscation. See FED.R.CIV.P. 8(e)(1). A RICO complaint must be presented with intelligibility sufficient "for a court or opposing party to understand whether a valid claim is alleged and if so what it is." Old Time Enter., Inc. v. International Coffee Corp., 862 F.2d 1213, 1218 (5th Cir.1989). And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding. See id. at 1219. Regarding the Appellants' complaint, the absence of this intelligibility and clarity is notable. The complaint, indeed, is the apogee of pleading by means of obfuscation. For its complete failure to adduce an intelligent story, one that a court can follow without untoward effort, we are tempted to dismiss it. Due to the liberality with which we construe pleadings at this stage, however, we have resisted the temptation. To understand the complaint, we will make the untoward effort.
 
 
 3
 The gist of the Appellants' claim[1] is that Indiana chiropractors in general, and chiropractors Kaminsky and Jennings, in particular, are being "persecuted" by Indiana state law enforcement personnel who are "supported" by conspiratorial medical organizations. This "persecution" is evidenced by three investigations carried on by Indiana authorities, one each related to each of two Appellants--Kaminsky, and Jennings--and one related to a nonappealing plaintiff, P. Joseph Lisa.
 
 
 4
 Kaminsky's "persecution," apparently, began in May of 1981. Kaminsky, it seems, had purchased for $1,000 a "Doctor of Homeopathic Medicine" degree from an outfit in Florida and, apparently on the strength of that "degree," had advertised himself as an "M.D." and performed certain medical procedures. These actions caused some small displeasure in the medical community. Several physicians took action, notifying the Indiana Medical Licensing Board (IMLB) and the Tippecanoe County Prosecutor's Office (TCPO) of Kaminsky's deeds and various statutes that may have been infringed. This led to investigations of Kaminsky by the IMLB and the TCPO. The IMLB investigation was short and sweet: hearings were held in June; in July a decision was reached that Kaminsky had violated Indiana law; Kaminsky's license was suspended for six months (with a five year probationary period to follow) in August.[2] The TCPO's investigation was somewhat more involved. Tippecanoe County prosecutor Meyers and deputy prosecutors Beyer, Lane, and Rouch all participated. Eventually, they prosecuted. On June 23, 1982, the TCPO filed criminal charges against Kaminsky. Yet this was just the beginning. Soon, the Indiana Attorney General's Office (IAGO) was contacted and brought into the fray. Attorney General Pearson and deputy attorney generals Minglin, Emry, and Hendrickson all became involved in varying degrees. So too did investigators Alder and Bays-Beinhart of the Consumer Product Division of the IAGO (CPD), CPD chief counsel Miller, Indiana State Police (ISP) members White, McClain and McCord, and an apparent confidential informant named Martin.
 
 
 5
 At certain times some or all of these people wrote memoranda to each other discussing the Kaminsky case, made motions and appearances in court, obtained subpoenas and affidavits, gathered evidence from insurance companies, obtained information from Indiana State Chiropractic Association peer review committee member Kelman, observed Kaminsky and his patients, ran various sting operations on Kaminsky and his health clinic, and otherwise "harassed" or "threatened" Kaminsky, his patients, his acquaintances, and his lawyer. This activity bore fruit: Kaminsky's license was suspended on March 22, 1984 and then revoked on June 29, 1984 by the Indiana Board of Chiropractic Examiners (IBCE).[3] In county court, a civil injunction was obtained against Kaminsky and later, on June 28, 1986, Kaminsky pled guilty to a criminal misdemeanor charge.[4]
 
 
 6
 Compared to Kaminsky's ordeal, Jennings's is refreshingly simple. Jennings and his health clinic apparently were being investigated by ISP member Buehrle. Buehrle, posing as a patient, ran a sting on Jennings's clinic. Evidence was gathered. In October, 1984, Buehrle and ISP member Sylvester entered Jennings's clinic and seized equipment and patient files. Thereafter the two examined the files. In November, Jennings went to court seeking a return of his equipment and files. In December "some of the confiscated items" were returned, but the investigation of Jennings continued.[5] In August, 1985, Jennings found out that the CPD was investigating him. In October, Jasper County prosecutor Fisher told Jennings that he was being investigated by the Grand Jury of Jasper County. Eventually, however, the Grand Jury returned a "no bill." About Jennings's further trials and tribulations, nothing more is known.
 
 
 7
 Unlike Kaminsky and Jennings, P. Joseph Lisa is not a chiropractor. He is a medical researcher and author. Nonetheless, like Kaminsky and Jennings, Lisa was "persecuted" by Indiana law enforcement personnel. Kaminsky and Jennings had hired Lisa to investigate a possible medical monopoly in Indiana. Lisa went to the IAGO and the TCPO to obtain information about Kaminsky's case. Amazingly, in both offices he was mistaken for an investigating member of a congressman's staff and was given access to attorney work product regarding the Kaminsky investigation. Minglin of the IAGO and Beyer of the TCPO eventually became suspicious about Lisa's credentials, however, and they got in touch with ISP member White. White was asked to investigate, and did investigate, Lisa. That investigation led to Lisa's arrest for misrepresentation and theft, his prosecution by Marion County deputy prosecutors Lundy, Devine, and Newman, and his eventual plea of guilty to charges of impersonating a public servant.[6]
 
 
 8
 The Appellees assert that this story does not state a claim under any section of RICO. Their assertion is comprised of several arguments. First, the Appellees argue that allegations of a "pattern of racketeering activity" are required for all sections of RICO, and that the Appellants have failed completely to allege a pattern of racketeering activity. The Appellants argue to the contrary; they point out that besides its factual allegation section, the complaint contains a 16 page section entitled "Racketeering Activity" that is devoted to showing the numerous racketeering acts of the Appellees. But a review of this section shows it to be 16 pages of waste. Most all of the purported racketeering acts listed are outside the scope of 18 U.S.C. Sec. 1961, which defines the crimes (called "predicate acts") constituting racketeering acts. For example, the Appellants allege that the Appellees have committed numerous violations of state and federal antitrust law, yet violation of antitrust law is not a predicate act under RICO. The Appellants allege that the Appellees have committed numerous violations of civil rights and constitutional law, yet, again, violations of these laws are not predicate acts under RICO. Such irrelevant allegations, and others like them,[7] go on page after page. While alleging statutory violations--indeed, while just about incorporating all of the federal and Indiana codes--the allegations do not allege racketeering acts.
 
 
 9
 In their brief, the Appellants seem to concede the irrelevancy of most of their allegations. They do, however, point out that somewhere in the 16 pages there are a few allegations of predicate acts. In their brief, for example, the Appellants state that they alleged that in July, 1984, Buehrle violated I.C. 16-6-8-3(f)(1), which makes it unlawful for any person to obtain a legend drug[8] by fraud.[9] A look at the complaint's "racketeering activity" section shows, however, that the Appellants charged Buehrle with violating I.C. 16-6-8-3.5(a), which makes prescriptions for legend drugs invalid under certain circumstances, not with violating I.C. 16-6-8-3(f)(1). This discrepancy is minor, however, since in pleading predicate acts conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations; Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1251-52 (7th Cir.1989); see also Jones v. Lampe, 845 F.2d 755, 758 (7th Cir.1988); Ray v. Karris, 780 F.2d 636, 645 (7th Cir.1985); Seglin v. Esau, 769 F.2d 1274, 1283 (7th Cir.1985); and in this case neither of the conclusory allegations are supported by proper factual allegations.[10] The same holds for the Appellants' other allegations of state and federal law violations, both those "pinpointed" in their brief and otherwise: all are bare legal conclusions unsupported by sufficient factual detail.[11]
 
 
 10
 Even assuming, arguendo, that somewhere in their complaint the Appellants hid sufficient allegations of racketeering activity, their complaint would still fail for lack of alleging a "pattern," which is "[a] crucial element of a section 1962 claim." Triad Assoc., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 594 (7th Cir.1989). A pattern is something that evinces a continuous and related course of conduct; H.J. Inc. v. Northwestern Bell Tel. Co., --- U.S. ----, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); a complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct--one indicating the threat of continuing criminal activity--reasonably may be inferred. See Jones, 845 F.2d at 757, 758. See generally Management Computer Serv., Inc. v. Hawkins, Ash, Baptie & Co., 883 F.2d 48, 51 (7th Cir.1989); Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir.1986). The Appellants' complaint fails in this regard. In several places it boldly asserts that "each Defendant agreed to and did commit at least two racketeering activities" or that "[a]t least two predicate offenses of racketeering activity were committed by each Defendant." These statements are mere conclusions, however, and will not suffice; Jones, 845 F.2d at 758; moreover, "[m]erely alleging two predicate acts ... does not satisfy the pattern requirement," Olive Can Co. v. Martin, 906 F.2d 1147, 1150 (7th Cir.1990), and that is the most that can be squeezed from these statements. In other places the complaint asserts that "[e]ach Defendant has been involved in a pattern of racketeering activity" or that "[e]ach of the Defendants has been associated with their predicate offenses"; but, again, these conclusory and indirect (involved in?; associated with?) statements will not suffice. See Jones, 845 F.2d at 758. And the statements that will suffice--the facts alleged in the complaint--fail adequately to allege on the part of any of the Appellees a continuous and related course of racketeering activity, a "pattern" as defined by our prior opinions. See Olive Can Co., supra; Triad Assoc., Inc., supra; Management Computer Serv., Inc., supra; Sutherland v. O'Malley, 882 F.2d 1196 (7th Cir.1989); Ashland Oil, Inc. v. Arnett, 875 F.2d 1271 (7th Cir.1989); Deppe v. Tripp, 863 F.2d 1356 (7th Cir.1988); Brandt v. Schal Assoc., Inc., 854 F.2d 948 (7th Cir.1988); SK Hand Tool Corp. v. Dresser Indus., Inc., 852 F.2d 936 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989); Jones, supra; Medical Emergency Serv. Assoc., S.C. v. Foulke, 844 F.2d 391 (7th Cir.1988); Liquid Air Corp. v. Rogers, 834 F.2d 1297 (7th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); United States v. Horak, 833 F.2d 1235 (7th Cir.1987); Appley v. West, 832 F.2d 1021 (7th Cir.1987); Tellis v. United States Fidelity & Guar. Co., 826 F.2d 477 (7th Cir.1986); Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806 (7th Cir.1987); Skycom Corp. v. Telstar Corp., 813 F.2d 810 (7th Cir.1987); Marks v. Pannell Kerr Forster, 811 F.2d 1108 (7th Cir.1987); Elliott v. Chicago Motor Club Ins., 809 F.2d 347 (7th Cir.1986); Morgan, supra; Lipin Enter., Inc. v. Lee, 803 F.2d 322 (7th Cir.1986). True it is that the Appellants have included in their complaint a whole list of statutes they allege were breached. But "simply alleging racketeering acts is not enough to allege a RICO pattern," Lipin Enter., Inc., 803 F.2d at 324, and simply alleging racketeering acts is all we can possibly credit the Appellants with here.[12]
 
 
 11
 The "pattern" requirement aside, the Appellees also argue that the Appellants have failed adequately to allege a RICO enterprise. Indeed they have. Regarding pleading, the first rule is that "[a] plaintiff must identify the enterprise." Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1136 (7th Cir.1986), cert. denied, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). Enterprises may be of two types: legal entities and extra-legal "associations in fact." United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981). The Appellants have lots of entities, legal or otherwise, floating about in their complaint, but nowhere do the Appellants adequately identify the enterprise upon which our attention should be directed.[13]
 
 
 12
 Their closest attempt at identification is an allegation that each of the Appellees is "connected" "with various enterprises including the collective criminal enterprise," which is "an on-going criminal syndicate, the operation of which is carried out with support of the American Medical Association and its affiliated groups including the Indiana State Medical Association and the Tippecanoe County Medical Association as well as the Indiana State Police, the Office of the Attorney General of the State of Indiana and the Prosecutors' Offices for Tippecanoe, Marion and Jasper Counties." According to the Appellants, this "enterprise" is purportedly described in the complaint's factual allegation section; but we find nothing there alleging the existence of an enterprise. Whether legal or extra-legal, each enterprise is an ongoing "structure" of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making. See Old Time Enter., Inc., 862 F.2d at 1217; Atlas Pile Driving Co. v. Di Con Financial Co., 886 F.2d 986, 995 (8th Cir.1989). See also Turkette, 101 S.Ct. at 2528-29. An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does. See Turkette, 101 S.Ct. at 2528-29. The factual allegation section of the complaint alleges in great detail that various law enforcement personnel did certain things, e.g., wrote memos, talked on the telephone, investigated people, prosecuted people, but it alleges little more than this and it completely fails to indicate that a structure existed through which the law enforcement personnel worked their purpose. Of course, an obvious inference from the factual allegation portion of the complaint is that the "structure" through which the law enforcement personnel worked was their respective government offices. And precedent teaches us that government offices can serve as RICO enterprises. See United States v. Ambrose, 740 F.2d 505, 512 (7th Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985); United States v. Lee Stoller Enter., Inc., 652 F.2d 1313 (7th Cir.), cert. denied, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981). But the complaint indicates that the enterprise asserted is something else, something existing with the "support" of the government offices, but not including them,[14] something that we simply cannot find.
 
 
 13
 Why not look for an enterprise in the Appellants' assertions of conspiracy? Throughout the complaint there are many pseudo-allegations of "conspiracy," including those of a conspiracy of the Appellees to "contain or eliminate chiropractic." Putting our objections to the conclusory nature of these allegations aside, see Otto, 814 F.2d at 1137, do they not suffice to allege an enterprise? Alas, they do not. An enterprise is something more than a conspiracy. United States v. Neapolitan, 791 F.2d 489, 499-500 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 and Messino v. United States, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). It is something "more than a group of people who get together [and agree] to commit a 'pattern of racketeering activity,' " for "while the hallmark of conspiracy is agreement, the central element of an enterprise is structure." Id. The complaint may allege agreement; structure, however, it does not.
 
 
 14
 The Appellees raise other arguments to sink the Appellants' complaint. We feel no need to address them, just as we felt no need to address the many sound reasons relied on by the district court. The Appellants have raised claims under RICO subsections 1962(a), (b), (c), and (d). But in their attempt to allege everything, the Appellants have alleged nothing. "[T]he needle in the haystack," if any, "might as well not be there." Old Time Enter., Inc., 862 F.2d at 1220. The claims under subsections (a) and (b) are ludicrous; those under subsections (c) and (d) deficient. Thus, when the district court dismissed the Appellants' complaint[15] it did not err. Though the Supreme Court has opined that a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that opinion is not a mandate to countenance balderdash. As an epithet for the Appellants' complaint, "balderdash" is as good as it gets.
 
 
 15
 Below, the district court gave the Appellants leave to amend their complaint. The Appellants chose instead to stand on it and take this appeal. For that decision, they now must pay the price.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 As always, we regard as true the complaint's factual allegations and we view them and the reasonable inferences implied by them in the light most favorable to the plaintiffs, here, the Appellants. See SK Hand Tool Corp. v. Dresser Indus., Inc., 852 F.2d 936, 938 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989). See also Seglin v. Esau, 769 F.2d 1274, 1283 (7th Cir.1985) (a pleader is permitted "to enjoy all favorable inferences from facts that have been pleaded," but he is not permitted to substitute "conclusory statements ... for minimally-sufficient factual allegations"). The complaint's factual allegations, however, are at times meaningless; they float from nowhere, seemingly unconnected with any worldly experience. Because of this, we have embellished this statement of facts with background material from sources outside of the complaint, in particular two cases: In re Kenneth C. Kern, 555 N.E.2d 479 (Ind.1990), and Kaminsky v. Medical Licensing Bd., 511 N.E.2d 492 (Ind.Ct.App.1987). We have used nothing from these sources to contradict the factual allegations in the Appellants' complaint or the reasonable inferences implied by those allegations. We have used the sources merely to give insight into what the Appellants are talking about. Cf. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)
 
 
 [2]
 The Medical Board's decision later was upheld by the Indiana courts
 
 
 [3]
 Instrumental in effecting this decision, which later was upheld by the Indiana courts, was IBCE member Kolanko
 
 
 [4]
 Despite these setbacks, Kaminsky persevered. He obtained reinstatement of his license in 1987; this, despite the contrary efforts of IBCE member Simonson and others
 
 
 [5]
 ISP member White and deputy attorney general Minglin also worked on the Jennings case, although to what extent is unknown
 
 
 [6]
 As part of the proceedings against Lisa, members of the Marion County Prosecutor's Office and the IAGO waged a disqualification campaign against Lisa's (and Kaminsky and Jennings's) counsel, Kenneth Kern. This campaign failed, but another was more successful. Two counts of alleged improper conduct were filed against Kern by Indiana Supreme Court Disciplinary Commission executive secretary Breskow. Minglin, Lane, Emry, Beyer, Meyers, White, Newman, and Pearson all gave deposition testimony for the disciplinary hearings, deposition testimony unfavorable to Kern. Kern was found guilty of Count II, alleging conflict of interest. He eventually was suspended from the practice of law for 60 days
 
 
 [7]
 Other examples of irrelevant alleged federal law violations: 18 U.S.C. Sec. 242 (deprivation of rights under color of law); 18 U.S.C. Sec. 2 (aiding and abetting the commission of some unknown crime); 18 U.S.C. Sec. 1 (classification of crimes); 18 U.S.C. Sec. 1001 (lying to the FBI). Examples of alleged state law violations: I.C. 34-1-5-1 (rules for pleading for libel and slander); I.C. 34-1-14-5 (incompetent witnesses); I.C. 35-43-4-4(h)(3) & (4) (authorizing return of property from law enforcement agency); I.C. 35-44-2-2 (false informing); I.C. 35-44-3-4 (obstruction of justice); I.C. 35-44-1-2 (official misconduct); I.C. 35-41-5-1 (attempt to restrain trade); I.C. 35-41-5-2 (conspiracy to restrain trade); I.C. 34-41-2-4 (aiding and abetting); I.C. 35-43-1-2 (criminal mischief); I.C. 35-45-2-2 (harassment); I.C. 24-1-2-5 (duties of attorney general and prosecuting attorney); I.C. 34-4-30.5-2 (action by prosecuting attorney to enjoin violation of law); I.C. 34-1-60-9 (deceit of attorney); I.C. 35-33-5-5 (disposition of seized items); I.C. 35-41-1-2 (repealed); etc
 
 
 [8]
 For a definition of "legend drug," see I.C. 16-6-8-2(k)
 
 
 [9]
 We offer no opinion on whether a violation of I.C. 16-6-8-3(f)(1) constitutes a racketeering act
 
 
 [10]
 The factual allegation portion of the complaint alleges the following: "In July 1984, Defendant BUEHRLE after obtaining an illegal prescription of diabenzanine from a licensed pharmacist, went to the office of JENNINGS using an undercover name, Mike Peterson, and a fictitious employment." We cannot find from this allegation "facts from which the court may make ... a determination" that the Indiana statutes were violated. See Reynolds, supra, 882 F.2d 1251-52. This is especially so in light of the complaint's presentation of Buehrle as an investigating member of the ISP
 
 
 [11]
 The "pinpointed" allegations include Martin's purported violation of I.C. 35-43-1-1 (arson), Alder's purported violation of I.C. 35-43-4-2 (theft; receiving stolen property), and Simonson's purported violation of I.C. 35-44-1-1 (bribery). They also include a plethora of purported violations, by numerous Appellees, of 18 U.S.C. Sec. 1951. The factual detail supporting these purported violations is absent, however; the complaint fails adequately to allege--in facts--that the above mentioned crimes were committed. The same goes for all of the Appellants' other allegations, including their numerous allegations of mail and wire fraud, 18 U.S.C. Secs. 1341 and 1343
 
 
 [12]
 Assuming, arguendo, that some of the alleged statutory violations constitute racketeering acts, and waiving, for the moment, our plaint with the conclusory manner in which the allegations are made
 
 
 [13]
 The Appellants mention, among other entities, (1) the conspiracy of the "members of the Indiana State Medical Association," (2) the conspiracy of the American Medical Association, the Indiana State Medical Association, Minglin, White, and "numerous other named and unnamed people," (3) "various enterprises including [the] collective criminal enterprise," (4) "an on-going criminal syndicate," and (5) "the legitimate practice of chiropractic."
 
 
 [14]
 Appellants' counsel's concession at oral argument that the complaint's purported enterprise is an association-in-fact of the Appellees bears this interpretation out: the government offices are not the purported enterprise, the Appellees are. As for this association-in-fact, again, there is nothing in the complaint to show that the Appellees constitute a separate and distinct enterprise: there is nothing indicating a command structure separate and distinct from the government offices; there is nothing indicating an enterprise existing apart from the Appellees' deeds
 
 
 [15]
 In addition to claiming under the federal RICO statute, the Appellants' complaint claims under various provisions of Indiana state law. Absent the jurisdiction provided by the federal RICO count, however, the Appellants' state law claims need not be addressed. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)