ADVANCED BUSINESS SYSTEMS, INC.
a Louisiana Corporation, d/b/a Execu-
tone Business Products, Frank La-
biche, an individual, Allen Jones, an
individual, Jess Hutchinson, an individ-
ual, and Alan Petro, an individual

v.

PHILIPS INFORMATION SYSTEMS
COMPANY, an Operating Division of
North American Philips Corporation,
and N.V. Philips Gloeilampenfabrieken.

No. 88–5113.

United States District Court,
E.D. Louisiana.

Nov. 9, 1990.

Provino C. Mosca, New Orleans, La., D. Frank Davis, Joseph W. Letzer, E. Clayton Lowe, Jr., Burr & Forman, Birmingham, Ala., for plaintiffs and counter-defendant Advanced Business Systems, Inc.

Harry Simms Hardin, III, Thomas K. Potter, III, Judith V. Windhorst, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants and for counter-claimant Philips Information Systems, Inc.

Warren D. Jones, Charles L. Tilis, Coopers and Lybrand, New Orleans, La., for movants Warren D. Jones and Charles L. Tilis.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendants' Motion for Partial Summary Judgment on plaintiffs' claims for lost profits and attorney's fees under Count I,[1] and for lost profits under Counts VI, VII and VIII,[2] of plaintiffs' Fourth Amended Complaint. Defendants also Motion to Strike plaintiffs' claims for punitive damages and attorney's fees from Count I. The motions, set for hearing on September 26, 1990, were taken on briefs without oral argument.[3]

## BACKGROUND

This continuing diversity litigation arises from the alleged frauds, breach of contract, breach of trust and Civil RICO violations of the defendants in the course of their business dealings with the plaintiffs from 1983 through March 1988. During this period, ABS was a dealer and distribu-

tor of Philips' products with a history of various dealership agreements existing between the parties. The latter of these agreements, and upon which this suit relies, is the Dealer Agreement dated March 26, 1984 through which the parties continued to do business up until March 1988. This agreement contains a Texas choice-of-law provision, and none of the parties contests that Texas law governs the making and performance of this Dealer Agreement.

Plaintiffs allege that, beginning in 1984 and continuing to the present, the defendants PhisInc., NAPC and N.V. Philips have engaged in a combined corporate strategy whereby they intentionally misrepresented to their dealers and others that various state of the art computer hardware products had been developed and tested by them, and that this advanced equipment existed and was being produced for these dealers in the U.S. market, when in fact the defendants had made the decision by 1984 to substantially reduce or curtail their commitment to the U.S. market and that no such computer research and development had been undertaken or completed. By maintaining this fraudulent face with their dealers through mail and wire communications, videotape promotions and personal meetings, plaintiffs allege that the defendants successfully induced their dealers and distributors to make additional purchases of Philips' products in anticipation of this next generation of Philips' computer hardware, thereby easing Philips' withdrawal from the U.S. office automation market altogether while leaving these dealers and distributors in the lurch. Following a voluminous litigation characterized

---

1. Count I, "Fraud, Misrepresentation, Failure to Disclose," prays for compensatory damages in excess of $1,000,000. according to proof at trial, together with incidental damages, interest and costs including attorney's fees, plus (under Texas law) punitive damages, and such other damages as to which they may be entitled.

2. Count VI, "RICO," prays against PhisInc. for compensatory damages and treble damages, together with costs of this action, interest and reasonable attorney's fees; Count VII, "RICO Conspiracy," prays against PhisInc. for the same relief and Count VII, "RICO Association In Fact

Enterprise," prays against PhisInc. and N.V. Philips for the same relief.

3. Defendants filed this Motion on August 29, 1990, the day after a status conference in this case in which the Court appointed its own accounting experts, Coopers and Lybrand, to analyze the substantiation and quantification of plaintiffs' business loss claims and the potential for mitigation claimed by the defendants, and to quantify defendants' sales and service in plaintiffs' territory subsequent to the termination of plaintiff's Dealer Agreement.

by palpable animosity and a continuing lack of cooperation between the parties throughout discovery, the plaintiffs filed their Fourth Amended Complaint on July 25, 1990.

## STATE LAW CLAIMS

Defendants move now for partial summary judgment as to Count I of plaintiffs' Fourth Amended Complaint, contending that lost profits, punitive damages and attorney's fees are not recoverable under Texas law.

■■■ Under Texas law, consequential damages are recoverable in actions for fraud in the inducement to contract where (1) the defrauded party is an existing enterprise with a history of profits in its business activity, and (2) where the alleged lost profits are not remote or speculative but readily ascertainable when included in consequential damages. *See Freedonia Broadcasting Group v. RCA Corp.,* 569 F.2d 251, 259 (5th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978). To establish fraudulent inducement to contract under Texas law, the plaintiff is required to show that the defendant misrepresented an existing or past fact or that the defendant made a promise intending not to perform the promised act at the time the promise was made. *Dickinson v. Auto Center Mfg. Co.,* 594 F.2d 523, 526 (5th Cir.1979), citing *Freedonia,* supra, at 258; *Karp v. Cooley,* 349 F.Supp. 827, 837 (S.D. Tex.1972), *aff'd,* 493 F.2d 408 (5th Cir.), *cert. denied,* 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974). In addition to actual and consequential damages, the defrauded party may also recover exemplary damages if it proves that the defendant acted from the outset with the intent not to fulfill its promises. *Freedonia,* supra, at 259. It is the fraud of having never intended to honor the promise when it was made—as distinct from the breach of the promise itself—that is the independent tort and independent basis for this punitive recovery. *C*

*& C Partners v. Sun Exploration & Production Co.,* 783 S.W.2d 707, 719 (Tex.App. —Dallas 1989, reh. den. 1990); *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex. 1986) (per curiam); *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 745 (Tex.1986).

■■■ Defendants' general assertions of Texas law regarding lost profits and punitive damages are clearly erroneous, and defendants are further in error in this motion when asserting that there are no outstanding genuine issues of material fact in this entire matter. The Court's appointment of the accounting firm of Coopers and Lybrand on August 28, 1990 for independent analysis and substantiation of the allegations in plaintiffs' Fourth Amended Complaint is a clear statement of the existence of outstanding issues of material fact central to the rules of Texas law to be applied in this case. Defendants are correct, however, in their contention that attorney's fees are not recoverable under Count I of plaintiff's Fourth Amended Complaint. It is well settled under Texas law that attorney's fees are not recoverable as actual damages in fraud cases, *Kneip v. Unitedbank–Victoria,* 774 S.W.2d 757, 759 (Tex. App.—Corpus Christi 1989); *Kilgore Fed. Savings & Loan Ass'n v. Donnelly,* 624 S.W.2d 933, 938 (Tex.App.—Tyler 1981, writ ref'd n.r.e.), and plaintiffs have appropriately not contested this aspect of defendants' motion in their memoranda.

## FEDERAL RICO CLAIMS

Defendants also move for partial summary judgment contending that lost profits are not recoverable under Counts VI, VII, and VIII (the RICO Counts) of plaintiff's Fourth Amended Complaint.

In interpreting the scope of recovery under 18 U.S.C. § 1964(c)[4], the Supreme Court ruled "[a] plaintiff only has standing if, and to the extent that, he has been

---

. **4. § 1964. Civil remedies**
(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall re-

cover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
18 U.S.C.A. § 1964 (West 1984).

injured in his business or property by the conduct constituting the violation ... [a]ny recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *see also American National Bank And Trust Co., et al v. Haroco*, 473 U.S. 606, 609, 105 S.Ct. 3291, 3292, 87 L.Ed.2d 437 (1985) (per curiam) (RICO plaintiffs entitled only to damages proximately caused by the predicate acts). While the parties have searched for decisional authorities from across the nation either allowing or denying an award for "lost profits" in § 1964(c) damages upon the particular facts and law applicable to the case, this Court looks first to the Fifth Circuit's rulings and dicta concerning the nature and scope of damages under § 1964(c). While the issue of "lost profits" as damages in a RICO fraud and breach of contract action has not been specifically addressed by the Fifth Circuit, the leading Fifth Circuit rulings and dicta regarding the scope of "injury to business or property" under § 1964(c) clearly allows the inclusion of damages so characterized. In *R.A. G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350 (5th Cir.1985), plaintiff brought a RICO action complaining that defendants had combined to defraud the plaintiff company through submissions of false equipment rental and service invoices. The plaintiff company never made payment on these invoices, but used the mailings of these fraudulent invoices as the basis for a RICO claim to seek damages under § 1964(c) and an order prohibiting the defendants from such further conduct. In reversing the district court's dismissal of the complaint for failing, *inter alia*, to allege a "racketeering injury," the Fifth Circuit, per Judge Wisdom, ruled that "[a]ny injury to business or property caused by a violation of 18 U.S.C. § 1962(c) is sufficient. The plaintiff has alleged business interruptions and expenses as a result of the defendants' alleged scheme to defraud the company." *Id.* at 1354. Judge Wisdom's closing dicta regarding the scope of the RICO Act pursuant to *Sedima* is further indication that

"[a]ny injury to business or property" means just that:

> The scope of the civil RICO statute is breathtaking. An allegation of fraud in a contract action can transform an ordinary state law claim into a federal racketeering charge. It may be unfortunate for federal courts to be burdened with this kind of case, but it is not for this Court to question policies decided by Congress and upheld by the Supreme Court. The broad language of the statute and the *Sedima* decision provide us with clear guidance.

*Id.* at 1355.

In further development of its post-*Sedima* interpretation of § 1964(c), the Fifth Circuit in *Zervas v. Faulkner*, 861 F.2d 823 (5th Cir.1988), again referred to the *Sedima* decision to find that "[a] requirement that the nexus between the injury and a predicate act be "direct" may, at least in some circumstances, be overly restrictive," and noted that the *Sedima* majority did not limit § 1964(c) damages to only those types of competitive injuries which the dissenters in *Sedima* enumerated in their opinion. *Id.* at 833. Relying on its own precedent in *National Enterprises, Inc. v. Mellon Financial Services Corp.*, 847 F.2d 251 (5th Cir.1988) (plaintiff's loss must be caused by the predicate acts perpetrated against the plaintiff directly), and the decisions of their sister circuits in *Sperber v. Boesky*, 849 F.2d 60 (2nd Cir.1988) (legal liability should not extend as far as factual causation; both direct and indirect injuries must be proximately caused), and *Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir.1988) (not only cause in fact, but legal or proximate cause is required; the determination is one of law for the court, taking into consideration such factors as foreseeability, intervening causes and the factual directness of the causal connection), the Fifth Circuit, per Judge Garwood, concluded "[w]e are in general agreement with the approach taken in *Sperber* and *Brandenburg* and believe those principles are fully consistent with and logically flow from *National Enterprises*." 861 F.2d at 834–35. In distinguishing the rulings of the various

circuits as to the standing requirements and damages recoverable under § 1964(c), and reaffirming their position in *Zervas*, the Fifth Circuit in *Ocean Energy II v. Alexander & Alexander, Inc.*, 868 F.2d 740 (5th Cir.1989), per Judge Thornberry, again emphasized "we rejected the position taken by the Seventh, Eleventh and possibly Third Circuits interpreting the language in *Sedima* as allowing recovery only for *direct* injuries." Instead, we stated that "[a] requirement that the nexus between the injury and a predicate act be "direct" may, at least in some circumstances, be overly restrictive," *id.* at 744 (emphasis in original), citing *Zervas*, supra, at 833, and concluded

> Rather than construing section 1964(c) as imposing an artificial distinction between direct and indirect injuries, we believe that *Sedima*'s "caused by" and "flow from" language instructs us to employ a traditional causation analysis in determining whether a RICO plaintiff has been injured "by reason of" a section 1962 violation. Thus, a person will be considered injured "by reason of" a RICO violation if the predicate acts constitute (1) factual (but for) causation and (2) legal (proximate) causation of the alleged injury.

868 F.2d at 744, citing *Zervas*, supra, at 834–35; *Old Time Enterprises, Inc. v. Int'l. Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989) (proximate causal relation must exist between the RICO predicate act and the plaintiff's damages); *Sperber v. Boesky*, supra, at 63–66 (adopting factual and legal causation analysis); *Brandenburg v. Seidel*, supra, at 1189. *But see Bankers Trust Corp. v. Rhoades*, 859 F.2d 1096 (2nd Cir.1988) (despite citing *Sperber*, held that "by reason of" language only imposed factual causation). This Court finds that Fifth Circuit law has interpreted that the phrase "injury to business or property" flowing from a violation of § 1962(c) can include lost profits, subject to proof of such proximately caused damages, and joins in the approach taken by other trial courts in this inquiry. *See, e.g., Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F.Supp. 127 (S.D.N.Y.

1988) (adopted *Dement* analysis); *Dement v. Abbot Capital Corp.*, 589 F.Supp. 1378 (N.D.Ill.1984) (no bar in RICO to recovery of lost profits; lost profits subject to ordinary limitations concerning remoteness (or proximate cause) and speculativeness (or certainty); burden on plaintiff to prove entitlement to lost profits damages). Again, it was the purpose of this Court's appointment of Coopers and Lybrand—as independent accounting experts—to quantify and substantiate plaintiff's alleged damages for the benefit of both the Court and the parties to this suit. This Court holds that lost profits are recoverable in RICO damages, but the Court and the parties in the instant case have yet to discover whether such lost profits as "injury to business" under § 1964(c)—whether "direct" or "indirect"— are (1) readily ascertainable and reasonable based on the business experience and practices of the plaintiffs, and (2) proximately caused by the alleged racketeering conduct of the defendants.

Defendants' final contention is that plaintiffs' claim in Count I for punitive damages under Texas common law fraud must be stricken as duplicative of the treble damages already provided in the RICO statute. Congress provided in 18 U.S.C. § 1964(c) that RICO plaintiffs are entitled to treble proven damages and a reasonable attorney's fee, and Fifth Circuit jurisprudence has already ruled that only one-third of these damages is deemed compensatory, with the other two-thirds penal in nature. *Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir.), *reh. and reh. en banc den.*, 863 F.2d 882 (5th Cir.1988), *vacated on other grounds, Fryer v. Abell*, 492 U.S. ——, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). Defendants have again jumped the gun, but may rest assured this Court will not allow duplicative recoveries under *either* the compensatory or punitive theories applicable to this case. Concomitant to any possible findings of liability or quantum by a jury in this matter, this Court will have employed detailed jury instructions and special interrogatories which will allow the Court to determine, as a matter of law, the correct addition, elimination and/or multi-

plication of any possible findings of damages under each of the theories in this case, should such findings ever be made. *See Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc., et al.,* 731 F.2d 1160, 1171 (5th Cir.1984) (dicta on the problem of duplicate recoveries in RICO cases; to the extent that duplication may be found to present a fact issue, special interrogatories submitted to the jury could help the court avoid such duplication in the entry of final judgment in the case).

Accordingly, for all the aforesaid reasons, defendants' Motion for Partial Summary Judgment on plaintiffs' claims for lost profits, punitive damages and attorney's fees under Count I is hereby DENIED IN PART as to lost profits and punitive damages, and GRANTED IN PART as to attorney's fees. Defendants' Motion to Strike plaintiffs' claims for attorney's fees under Count I is hereby GRANTED. Defendants' Motion for Partial Summary Judgment on plaintiffs' claims for lost profits under Counts VI, VII and VIII is hereby DENIED. The Court will RESERVE RULING on defendants' Motion to Strike plaintiffs' claims for punitive damages under Count I.