**Roxanne Phillips BASSETTE,**
**Plaintiff–Appellant,**

v.

**STONE CONTAINER CORPORATION,**
**Defendant–Appellee.**

**No. 92–36881.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1994.

Decided May 27, 1994.

John B. Whiston, Rossbach & Whiston, Missoula, MT, for plaintiff-appellant.

Howard Rubin, Amburgey, Segel & Rubin, Portland, OR, for defendant-appellee.

Before: HUG, HALL, and THOMPSON, Circuit Judges.

Opinion by Judge HUG.

HUG, Circuit Judge:

Appellant Roxanne Phillips Bassette ("Bassette") brought suit against Appellee Stone Container Corp. ("Stone"), her former employer, for allegedly terminating her without good cause, in violation of Montana's Wrongful Discharge From Employment Act, Mont.Code Ann. §§ 39–2–901 *et seq.* (1987) ("WDA"). The district court granted Stone's motion for summary judgment, finding Bassette's claim preempted by the National Labor Relations Act ("NLRA"). Bassette appeals the district court's granting of summary judgment. We affirm.

## I. *FACTUAL BACKGROUND*

Bassette was employed by Stone, and its predecessors, at a papermill from 1981 until her discharge in February of 1988. Throughout her employment at Stone, Bassette was represented by The United Paperworkers International Union Local 885 ("Union"). The most recent collective bargaining

agreement ("CBA") between Stone and the Union was in effect from June, 1984 through May, 1987.

In 1987, when preliminary negotiations towards reopening the CBA failed, the agreement was terminated. After termination, Stone continued to abide by the terms of the expired CBA, pursuant to its duty to do so under the NLRA. The parties continued to negotiate, but the talks reached impasse in November of 1987. After impasse, Stone announced and unilaterally implemented the terms and conditions of the last and final offer it had presented to the Union during negotiations. These terms included a provision that the discharge of any employee must be for "just and sufficient cause."

At the time of her termination, Bassette was employed as a paper tester, and Stone asserted that the basis for her termination was that she had been falsifying test results. Bassette maintains that her discharge was without good cause. Bassette brought suit in Montana state court under Montana's WDA, which makes it unlawful for an employer to discharge an employee without "good cause." Mont.Code Ann. § 39–2–904(2) (1987).

Stone removed the action to federal court on diversity and federal question grounds. By order dated October 9, 1992, the district court granted Stone's motion for summary judgment, finding that Bassette's claim was preempted by the NLRA.

## II. *DISCUSSION*

We review the district court's grant of summary judgment *de novo*. *Jones v. Union Pacific R.R.*, 968 F.2d 937, 940 (9th Cir. 1992). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.1992), *cert. granted*, —— U.S. ——, 114 S.Ct. 543, 126 L.Ed.2d 445 (1993).

■ The Supreme Court has developed two lines of preemption analysis under the NLRA. The first line, known as *"Garmon"* preemption, prevents states from regulating any conduct subject to the regulatory jurisdiction of the National Labor Relations Board ("the Board"). *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The second line, known as *"Machinists"* preemption, prevents a state from interfering with conduct in the labor-management sphere that Congress intended to be unregulated by either state or federal law. *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The *Machinists* doctrine recognizes that there are areas of labor-management relations not within the jurisdiction of the Board, and thus not subject to *Garmon* preemption, but nonetheless outside the proper scope of state regulation. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985).

The district court granted summary judgment for Stone based upon its finding that Bassette's claim was subject to *Machinists* preemption. However, because we find Bassette's claim preempted under *Garmon*, we do not decide whether the district court's finding of *Machinists* preemption was proper.

An action brought under state law is preempted "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [section] 7 of the National Labor Relations Act, or constitute an unfair labor practice under [section] 8." *Garmon*, 359 U.S. at 244, 79 S.Ct. at 779. The "governing consideration" in *Garmon* preemption analysis is that "to allow the States to control activities that are *potentially* subject to federal regulation involves too great a danger of conflict with national labor policy," and that therefore such state regulation must be preempted. *Id.* 359 U.S. at 246, 79 S.Ct. at 780 (emphasis added).

■ It is not required for a finding of *Garmon* preemption that a plaintiff have a

certain remedy before the Board, or even that the Board will hear the claim in the first place. Indeed, one of the purposes behind the *Garmon* preemption doctrine is the preservation of the Board's sovereignty over determinations of which activities constitute violations of the NLRA, and which do not. *See U.A. 198 Health & Welfare, Educ. & Pension Funds v. Rester Refrigeration Service,* 790 F.2d 423, 425 (5th Cir.1986) ("Perhaps no principle of labor law is better established than that the Board should make the initial determination whether challenged action constitutes an unfair labor practice"), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 233 (1988). As the *Garmon* Court noted, "[a]t times it [is] not [ ] clear whether the particular activity regulated by the States [is] governed by [section] 7 or [section] 8 or [is], perhaps, outside both these sections." *Garmon,* 359 U.S. at 244, 79 S.Ct. at 779. Even when a court is unsure, however, "[i]t is essential to the administration of [the NLRA] that these determinations be left in the first instance to the National Labor Relations Board." *Id.* 359 U.S. at 244–45, 79 S.Ct. at 779–80.

■ Thus, *Garmon* stands for the principle that potential, rather than actual conflict between a state law claim and federal labor law is sufficient to require preemption of the state law claim. Once we determine that a claim brought under state law alleges conduct that "arguably" is subject to section 7 or section 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* 359 U.S. at 245, 79 S.Ct. at 780. *See also Local 926, Int'l Union of Operating Engineers v. Jones,* 460 U.S. 669, 676, 103 S.Ct. 1453, 1459, 75 L.Ed.2d 368 (1983) ("[I]f the conduct at issue is *arguably* prohibited or protected otherwise applicable state law and procedures are ordinarily pre-empted.") (emphasis added); *Lumber Production Industrial Workers Local 1054 v. West Coast Industrial Relations Ass'n, Inc.,* 775 F.2d 1042, 1048 (9th Cir.1985) ("[I]f a crucial element of a state court action is identical to an element of an unfair labor practice that is *arguably* cov-

ered by the NLRA, then the state action is preempted") (emphasis added).

Bassette's claim alleges that she was wrongfully discharged, in violation of Montana's WDA. Bassette's discharge took place after the CBA between Stone and the Union had expired, and after negotiations to reopen the CBA had reached impasse. Given the context of Bassette's discharge, we must determine whether the conduct that she alleges "arguably" or "potentially" falls within the purview of the NLRA.

■ It is well-established that, after the expiration of a CBA and before negotiations reach impasse, an employer is required to maintain the terms and conditions of employment as set forth in the expired agreement. *Laborers Health & Welfare Trust v. Advanced Lightweight Concrete,* 779 F.2d 497, 500 (9th Cir.1985), *aff'd,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); *Peerless Roofing Co. v. NLRB,* 641 F.2d 734, 735 (9th Cir.1981). Consequently, "an employer's failure to honor the terms and conditions of an expired collective bargaining agreement pending negotiations on a new agreement constitutes bad faith bargaining in breach of sections 8(a)(1), 8(a)(5) and 8(d) of the [NLRA]." *Laborers,* 779 F.2d at 500. Thus, a claim that alleges conduct that constitutes a violation of the terms of a CBA after expiration, but before impasse, is preempted under the NLRA. *Id.*

■ After impasse, an employer is free unilaterally to implement terms and conditions of employment, provided, however, that the terms were reasonably comprehended in the offers made to the union during pre-impasse negotiations. *NLRB v. Crompton–Highland Mills, Inc.,* 337 U.S. 217, 223–25, 69 S.Ct. 960, 963–64, 93 L.Ed. 1320 (1949); *Peerless Roofing,* 641 F.2d at 735. Implementation of terms not contemplated in pre-impasse offers is an indication that an employer failed to bargain in good faith with the union, in violation of section 8 of the NLRA. *Peerless Roofing,* 641 F.2d at 735. Thus, a claim that an employer implemented terms and conditions of employment that were not contemplated in its pre-impasse offers likewise would be preempted under the *Garmon* doctrine.

Bassette's claim does not allege that Stone wrongfully implemented a new term of em-

ployment. Rather, she alleges conduct that would constitute a violation of a term, discharge for "just and sufficient cause," that Stone properly implemented after impasse. We must therefore decide whether an employer who fails to honor the terms and conditions of an offer implemented after impasse violates section 8 of the NLRA.

We answered this question in a different context in *Cuyamaca Meats v. Pension Trust Fund,* 827 F.2d 491 (9th Cir.1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988). *Cuyamaca Meats* involved a dispute over the effective date of an employer's withdrawal from a "multiemployer pension plan," pursuant to the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381 *et seq.* ("MPAA"). The MPAA mandates that withdrawal from such a plan occurs when an employer, *inter alia,* "permanently ceases to have an obligation to contribute under the plan." 29 U.S.C. § 1383(a)(1).

Section 1392(a) of the MPAA provides that an "obligation to contribute" means an obligation to contribute arising "as a result of a duty under applicable labor-management relations law." 29 U.S.C. § 1392(a)(2). Thus, we were presented with the question of whether "applicable labor-management relations law" required an employer to continue to make payments to the plan after contract negotiations with the union reached impasse, given that the employer's post-impasse implemented terms included a provision requiring continued payments to the plan.

In answering this question, we first noted that employers were free unilaterally to implement terms of employment after contract negotiations reached impasse, if those terms were "reasonably comprehended" in the employers' pre-impasse offers to the union. *Cuyamaca Meats,* 827 F.2d at 496. We went on to hold that, once the employer had implemented post-impasse terms that mandated continued payments to the pension plan, it was also under an obligation to make those contributions, and, more importantly, that this obligation was one that "resulted from

duties imposed upon the Employers by Section 8(a)(5) of the [NLRA]." *Id.*

*Cuyamaca Meats* stands for the principle that, besides limiting employers in which terms they may implement after impasse, section 8 requires that employers honor those terms once they are implemented; the latter duty follows from the former.

With this principle in mind, the conclusion in the case at hand is clear. Bassette's claim alleges conduct on the part of Stone—discharge without good cause—that would constitute a failure to honor a term of employment implemented by Stone after negotiations with the Union reached impasse. *Cuyamaca Meats* establishes that such conduct would violate an employer's duties under section 8 of the NLRA. Because Bassette has alleged conduct that constitutes a violation of section 8, her claim is at least arguably subject to the jurisdiction of the NLRB. As such, her claim is preempted by the NLRA under the *Garmon* doctrine.

The order of the district court granting summary judgment for Stone is **AFFIRMED.**