125 F.3d 751
 156 L.R.R.M. (BNA) 2257, 7 A.D. Cases 339,
24 A.D.D. 799,
10 NDLR P 327, 97 Cal. Daily Op. Serv. 7240,
97 Daily Journal D.A.R. 11,701
 Oscar SMITH; Mark Driscoll; John Paraskevopoulos; George
Lopez; Juan P. Cubillas; Juan Marquez; Michael Ray Nash;
Hector Manuel Navarro; Steve Harding; Irma Camacho; Irma
Durazo; William N. Jordan; Stanley E. Turner; Romeo
Deleon; Francisco Barron; Oscar Nevarez; Robert J. Gill;
Eduardo Lencioni; Perry Mastaw; Antonio Moralez; Rodney
Ramseyer; Mario Castro; and Norris Fishman, Plaintiffs-Appellants,
v.
NATIONAL STEEL & SHIPBUILDING COMPANY, Does 1-500,
inclusive, Defendants-Appellees.
 No. 96-55281.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1997.
Decided Sept. 9, 1997.
 
 1
 Irvin M. Zalkin, San Diego, California, for plaintiffs-appellants.
 
 
 2
 William C. Wright and Van A. Goodwin, San Diego, California, for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of California; John S. Rhoades, Sr., District Judge, Presiding. D.C. No. CV-94-01029-JSR.
 
 
 4
 Before: BROWNING and KLEINFELD, Circuit Judges, and MERHIGE,* Senior District Judge.
 
 MERHIGE, Senior District Judge:
 
 5
 Plaintiffs-Appellants ("Plaintiffs") are twenty-four former employees of Defendant-Appellee, National Steel & Shipbuilding Company ("NASSCO"). Plaintiffs brought two separate civil actions which were consolidated in the Southern District of California. The suits alleged that NASSCO's implementation of a new layoff policy violated the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") as well as the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 et seq. ("FEHA"). Plaintiffs appeal the district court's granting NASSCO's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons which follow, we reverse.
 
 
 6
 * FACTS AND PROCEDURAL HISTORY
 
 
 7
 Plaintiffs are former union employees of NASSCO who were laid off between May 1993 and July 1994. In January 1993, NASSCO adopted a performance-based rating system, the "Performance Evaluation and Communication Program" ("PECP"), to determine which of its employees should be laid off. Prior to the adoption of the PECP, layoffs at NASSCO had been determined on a seniority basis. In their suits, Plaintiffs alleged that they are disabled persons and that the PECP has been used by NASSCO to purposefully layoff disabled workers in violation of the ADA and FEHA.
 
 
 8
 NASSCO moved for judgment on the pleadings under Fed.R.Civ.P. 12(c) or in the alternative for summary judgment under Fed.R.Civ.P. 56 on the basis that Plaintiffs' claims are preempted by the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA"). The district court found that Plaintiffs' claims were preempted by the NLRA under the Supreme Court's decision in San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and therefore granted NASSCO's motion for judgment on the pleadings. Plaintiffs appeal the decision of the district court.[1]
 
 II
 STANDARD OF REVIEW
 
 9
 This Court reviews de novo a Rule 12(c) judgment on the pleadings. Merchants Home Delivery Serv. v. Hall & Co., 50 F.3d 1486, 1488 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995); Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir.1993). A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. Merchants Home Delivery, 50 F.3d at 1488; Westlands, 10 F.3d at 670.
 
 III
 DISCUSSION
 A. Appellate Jurisdiction
 
 10
 As a threshold matter, NASSCO suggests that this Court may not have jurisdiction to hear Plaintiffs' appeal. Plaintiffs' Notice of Appeal incorrectly refers to a "Summary Judgment entered on January 24, 1996" when, in fact, the district court granted NASSCO's motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). NASSCO submits that dismissal is warranted because Plaintiffs have failed to comply with Fed. R.App. P. 3(c) which requires that a notice of appeal "designate the judgment, order, or part appealed from."
 
 
 11
 We find NASSCO's argument to be without merit as the rules also provide that "[a]n appeal will not be dismissed for informality of form or title of the notice of appeal." Fed. R.App. P. 3(c). Accordingly, we reject NASSCO's contention and will consider the merits of this appeal.
 
 B. Preemption under Garmon
 
 12
 The NLRA preempts any claim for relief based on conduct which is protected or prohibited by its provisions. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. In Garmon, the Supreme Court pronounced a general rule concerning the preemptive effect of the NLRA and the parameters of the primary jurisdiction of the National Labor Relations Board ("NLRB"):
 
 
 13
 When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of interference with national labor policy is to be averted.
 
 
 14
 Id. at 245, 79 S.Ct. at 779; see also Hayden v. Reickerd, 957 F.2d 1506, 1512 (9th Cir.1991). Preemption under Garmon does not require that a plaintiff have a certain remedy before the NLRB, or even that the NLRB will hear the claim in the first place. Bassette v. Stone Container Corp., 25 F.3d 757, 759-60 (9th Cir.1994). Instead, once a court determines that a plaintiff's claim alleges conduct that is "arguably" or "potentially" subject to § 7 or § 8 of the NLRA, the court is required to defer to the exclusive competence of the NLRB. Id. at 760; Bud Antle, Inc. v. Barbosa, 35 F.3d 1355, 1361 (9th Cir.1994).
 
 
 15
 In this case, Plaintiffs allege that "NASSCO has been utilizing the performance rating system to purposefully low rate handicapped and/or disabled workers which are then the first to be laid off" in violation of the ADA. Plaintiffs do not expressly allege that NASSCO failed to bargain in good faith in implementing the PECP or that NASSCO otherwise violated any provision of the NLRA. While recognizing that NASSCO's unilateral adoption of the PECP could, under some circumstances, constitute an unfair labor practice, Plaintiffs urge that NASSCO's actions constitute "independent" violations of the ADA.[2] In Plaintiffs' words, their suit "represents the exercise by twenty-four individual workers of their civil right not to be discriminated against by their employer because of their physical limitations."
 
 
 16
 NASSCO moved for judgment on the pleadings on the basis that the district court was without jurisdiction to hear Plaintiffs' claims. NASSCO insists that consideration of the ADA is not appropriate because the conduct Plaintiffs allege is arguably violative of the NLRA and therefore preempted under Garmon. In support of its position, NASSCO relies on cases where the Supreme Court has instructed that when considering Garmon preemption, "[i]t is the conduct being regulated, not the formal description of governing legal standard, that is the proper focus of concern." Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971).
 
 
 17
 In resolving NASSCO's motion, the district court applied traditional principles of Garmon preemption and found that, assuming the truth of Plaintiffs' allegations, NASSCO's conduct would arguably violate § 8 of the NLRA. The court rejected Plaintiffs' argument that the gravamen of their allegations was the violation of their civil rights. The court viewed Plaintiffs' claims as essentially seeking to remedy an unfair labor practice-the unilateral adoption of the PECP-rather than seeking to remedy a discriminatory practice. Thus, the district court concluded that Plaintiffs' state and federal claims were preempted by the NLRA and that NASSCO was entitled to judgment on the pleadings.
 
 
 18
 C. Applicability of Garmon to Plaintiffs' ADA Claims
 
 
 19
 In applying the Garmon preemption doctrine to Plaintiffs' allegations, the district court overlooked that, unlike in Garmon, the "conflict" in this case was not between federal and state law, but between two federal statutes.[3] The district court may have lost sight of the fact that Garmon preemption originates from the Supremacy Clause of the United States Constitution, and that this provision is only implicated when a case involves a conflict between a federal and a state law. See New York Tel. Co. v. New York Dept. of Labor, 440 U.S. 519, 539 n. 32, 99 S.Ct. 1328, 1341 n. 32, 59 L.Ed.2d 553 (1979). Garmon and its progeny was primarily concerned with the conflict between federal labor policy and state laws. As the Garmon Court stated:
 
 
 20
 To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. ... [T]o allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.
 
 
 21
 Garmon, 359 U.S. at 244, 79 S.Ct. at 779 (emphasis added). The Garmon court also noted "[o]ur concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered." Id. at 246, 79 S.Ct. at 780. (emphasis added).[4]
 
 
 22
 Whether Garmon preemption should be extended to preempt a federal, rather than a state, claim is an issue of first impression in this circuit. Nevertheless, the Supreme Court has indicated on several occasions that Garmon preemption is not implicated where the potential conflict is with federal law. For example, in Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989), the Court held that the district court had jurisdiction to hear a fair representation claim, which is founded solely on substantive federal law, even though the union's breach of their duty of fair representation might have violated § 8 of the NLRA. Id. at 78-80, 110 S.Ct. at 431-32. Similarly, in International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971), the Court held that the district court had jurisdiction to hear a claim that the plaintiff's unlawful expulsion from a union violated the Labor-Management Reporting and Disclosures Act, 29 U.S.C. § 411(a)(5) ("LMRDA"), even though the expulsion in that case was arguably an unfair labor practice. Id. at 237-39, 91 S.Ct. at 612-13.
 
 
 23
 In addition to this guidance from the Supreme Court, several of our sister circuits have addressed this issue and concluded that the Garmon preemption analysis is inapplicable when the NLRA potentially conflicts with another federal statute. In United States v. Boffa, 688 F.2d 919, 931-33 (3rd Cir.1982), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983), the Third Circuit held that Garmon did not preempt the court's consideration of a federal criminal statute prohibiting mail fraud.[5] Similarly, in United States v. International Bhd. of Teamsters, 948 F.2d 98 (2d Cir.1991), in holding that the district court had jurisdiction to consider a claim under the All Writs Act, 28 U.S.C. § 1651, the Second Circuit stated "where federal laws and policies other than the NLRA are implicated, the Garmon rule is frequently considered inapplicable." Id. at 105; see also American Postal Workers Union v. United States Postal Service, 766 F.2d 715, 720 (2d Cir.1985) (district court and NLRB have concurrent jurisdiction over suits to enforce labor contracts, "even if the conduct involved might entail an unfair labor practice."), cert. denied, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986).
 
 
 24
 The Fifth Circuit has also recognized that the intersection of two federal statutes involves an analysis distinct from traditional Garmon preemption. Britt v. Grocers Supply Co., Inc., 978 F.2d 1441, 1447 (5th Cir.1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993). In a well-reasoned opinion, the Britt court held that because traditional preemption analysis does not apply when two federal statutes conflict, the Age Discrimination In Employment Act, 29 U.S.C. §§ 621-634, was not preempted by the NLRA. Id.[6]
 
 
 25
 Finally, this Court has indicated, on at least one occasion, that Garmon preemption is inapplicable to cases involving two federal statutes. In Brock v. Writers Guild of America, 762 F.2d 1349 (9th Cir.1985), this Court rejected the district court's determination that the Secretary of Labor's action under the LMRDA was preempted by the NLRA:
 
 
 26
 We reject the district court's characterization of this issue in terms of "preemption" of the Secretary's authority. The use of the term "preemption" and the court's citation to [Garmon] are inapposite. Issues of preemption are implicated where a state has acted in an area which is reserved to the federal government, in violation of the Supremacy Clause. Garmon involved a state court's attempt to regulate activity which was arguably subject to the NLRA and within the primary jurisdiction of the NLRB. In contrast, the present action raises questions concerning the overlap of two federal statutes.
 
 
 27
 Id. at 1352 n. 4 (dicta).
 
 
 28
 These cases, as well as consideration of the principles which underlie Garmon preemption, lead us to conclude that, in cases such as this, where the "conflict" is between two federal statutes, Garmon preemption is inapplicable and a federal court may properly retain jurisdiction over non-NLRA federal claims.[7] In reaching this conclusion, we are guided by the fact that the doctrine of Garmon preemption is of constitutional dimension; it is grounded, in part, upon considerations of federal supremacy. No such constitutional concerns are implicated when a federal statute prescribing discriminatory action is said to impinge upon the primary jurisdiction of the NLRB. See Boffa, 688 F.2d at 932 (citing Garmon, 359 U.S. at 244, 79 S.Ct. at 779).
 
 
 29
 Additionally, the doctrine of NLRB primary jurisdiction is founded on the principle "that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over...." International Bhd. of Boilermakers, 401 U.S. at 238, 91 S.Ct. at 613 (citations omitted). This factor is simply not implicated in the present case. The determination of unlawful discriminatory employment practices is hardly a question beyond "the conventional experience of judges," nor can it be said to raise issue "within the special competence of the NLRB." Id. at 238-39, 91 S.Ct. at 613-14 (citations omitted).
 
 
 30
 In short, we find little reason why Garmon should be extended to cover cases involving the overlap of two federal statutes, and preclude the enforcement of a federal act which expressly prescribes the conduct alleged by a plaintiff.[8] Just as federal courts are ill-equipped to displace the role of the NLRB, the NLRB is not-suited to balance the competing federal interests presented by these two statutes. To permit the NLRB to decide claims in which an employer's reasonable accommodation may violate the NLRA would leave the interpretation of the ADA to the NLRB. This judicial function certainly exceeds that agency's expertise and authority. Instead, the careful balancing of these two statutes should be left to the federal courts, who may properly consider the requirements imposed on a employer by the NLRA when determining whether the employer has provided a reasonable accommodation.[9] Finally, and perhaps most importantly, we note that preemption in this case would leave disabled union employees who are the victims of unlawful discrimination without recourse to the federal forum which Congress sought to provide. We hesitate to deny this avenue of relief to plaintiffs in the absence of any indication that the issues presented in such suits were intended to be reserved for exclusive adjudication by the NLRB.
 
 IV
 CONCLUSION
 
 31
 We find that Plaintiffs' ADA claims present policy implications which render traditional principles of Garmon preemption inapplicable. We therefore hold that to the extent that Plaintiffs' ADA claims encompass conduct that is arguably covered by the NLRA, the ADA governs the prosecution of these claims and not the NLRA. Accordingly, the district court erred in granting NASSCO's motion for judgment on the pleadings. The decision of the district court is REVERSED and the case REMANDED for further proceedings.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Plaintiffs do not argue on appeal that their state law claims under the FEHA survive preemption
 
 
 [2]
 It is well-established that, after the expiration of a collective bargaining agreement and before negotiations on a new agreement reach impasse, an employer is required to maintain the terms and conditions of employment as set forth in the expired agreement. Bassette, 25 F.3d at 760. NASSCO concedes that it unilaterally implemented the PECP, but insists that it did so only after reaching an impasse in its collective bargaining negotiations with the unions
 
 
 [3]
 In Garmon, the Court considered whether a California state court had jurisdiction to award tort damages for activities which constituted an unfair labor practice under California law or whether the sanction of these activities fell within the exclusive jurisdiction of the NLRB. Garmon, 359 U.S. at 239, 79 S.Ct. at 776
 
 
 [4]
 See also Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 490 (9th Cir.1996) ("The purpose of the Garmon rule is 'to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA.' ") (quoting Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613, 106 S.Ct. 1395, 1397, 89 L.Ed.2d 616 (1986) (emphasis added)); Alameda Newspapers, Inc. v. City of Oakland, 95 F.3d 1406, 1412 (9th Cir.1996); Bud Antle, 35 F.3d at 1361
 
 
 [5]
 The Boffa court reasoned that when conduct is regulated by two federal statutes, the issue is whether by enacting the NLRA, Congress had intended to repeal the existing statute. Boffa, 688 F.2d at 932-33. Because the defendants presented no evidence that Congress intended that repeal the criminal statute at issue, the court held that the federal crime was not preempted. Id
 
 
 [6]
 See also Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 n. 2 (1st Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1852, 134 L.Ed.2d 952 (1996) (noting, without deciding, that Garmon preemption doctrine may not apply to conflict involving NLRA and a federal statute)
 
 
 [7]
 We recognize that Plaintiffs' ADA claims may also be said to fall under the well-recognized "collateral issue" exception to Garmon preemption. Garmon, 359 U.S. at 243, 79 S.Ct. at 778; Bud Antle, 35 F.3d at 1361; Hayden, 957 F.2d at 1512. Under this exception, federal courts may decide labor questions that emerge as collateral issues in suits brought under statutes providing for independent federal remedies. Connell Constr. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 626, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418 (1975). However, in light of our conclusion that Garmon preemption is not implicated in situations where two federal statutes are at issue, it is not necessarily to address the collateral issue exception. Accord Britt, 978 F.2d at 1447 ("[T]raditional preemption analysis does not apply in a conflict between two federal statutes."); Boffa, 688 F.2d at 931-33; Hood v. Smith's Transfer Corp., 762 F.Supp. 1274, 1283 (W.D.Ky.1991)
 
 
 [8]
 In concluding that Garmon preemption does not apply in this case, we do not disturb prior decisions of this Court which have held that Garmon will preempt a federal claim when that federal claim depends upon the NLRA to state the federal cause of action. See, e.g., Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 779 F.2d 497 (9th Cir.1985), aff'd, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988); Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc., 520 F.Supp. 942 (N.D.Cal.1981), aff'd, 692 F.2d 641 (9th Cir.1982). In these cases, the existence of the non-NLRA federal claim depended entirely on a threshold determination that a violation of the NLRA had occurred. Laborers Health & Welfare Trust Fund, 779 F.2d at 504 (ERISA claim preemption under Garmon because adjudication of ERISA claim "depends entirely on the section 8(a)(5) [of the NLRA] determination"); Cement Masons, 520 F.Supp. at 944 (plaintiffs' suit under Labor Management Relations Act "depends entirely" on NLRA). Here, the determination of whether NASSCO's policy violates the ADA does not require any reference to the NLRA
 
 
 [9]
 Federal courts may refer to a published 1992 memorandum by General Counsel of the NLRB which discusses many of the potential conflicts between the NLRA and the ADA. NLRB Gen. Cons.Mem. 92-9 (Aug. 7, 1992), reprinted in 1993 WL 407395 (N.L.R.B.G.C.). Courts may also seek the input of the NLRB as amicus curiae. Thus, the NLRB will not be left without a voice in the decision-making process