**MARIAH BOAT, INC. and Jimmy Fulks, Plaintiffs,**

v.

**LABORERS INTERNATIONAL UNION OF NORTH AMERICA, Randall Mayhew, and the Laborers District Council for Southern Illinois, Defendants.**

No. 97–CV–4270–JPG.

United States District Court, S.D. Illinois.

June 17, 1998.

Glenn D. Denton, Denton & Keuler, Paducah, KY, for Delbert Sullivan.

Michael F. Harris, Harris, Dowell, et al., Chesterfield, MO, for Commercial Transport, Inc.

John J. Franczyk, Jr., Des Plaines, Robert G. Heckenkamp, Heckenkamp, Simhauser, et al., Springfield, IL, for Central States Pension.

T. David Purcell, Mitchell, Neubauer, et al., Mt. Vernon, for Plaintiffs.

Michael W. O'Hara, Cavanagh & O'Hara, Springfield, IL, Terrance G. Reed, Christopher A. Hostage, Reed & Hostage, Washington, DC, for Defendants.

## ORDER

GILBERT, Chief Judge.

This matter comes before the Court on the motion to dismiss filed by the defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. no. 10. The defendants argue for dismissal on the grounds that (1) the plaintiffs' claims are preempted by the National Labor Relations Act ("NLRA") and (2) the plaintiffs failed to satisfy the pleading requirements under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The plaintiffs responded to the motion, but a reply was not submitted. See doc. no. 18.

### I. Background

This case originates from apparent union organization efforts by the defendants, Laborers International Union of North America, Randall Mayhew, and the Laborers District Council for Southern Illinois. The plaintiff, Jimmy Fulks ("Fulks"), claims that Mayhew and the Union intentionally tried to run him and his company, Mariah Boats, Inc. ("Mariah") out of business. As a result of this illegal conduct, the plaintiffs allege a RICO violation and six (6) supplemental state law claims.

As this case is before the Court on a motion to dismiss, the Court must assume that all facts alleged in the complaint are true. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Colfax Corp. v. Ill. State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir.1996). Accordingly, the facts for purposes of this motion are as follows.

Mariah is an Illinois corporation that manufactures and sells boats. Jimmy Fulks is the majority owner of Mariah and 50% owner of another related company, Chariot Marine Fabricators & Industrial Corp. Randall Mayhew, sued in this case as an individual and as a representative of the union, is the Regional Organizing Director for the Laborers International. His job duties include organizing non-union employees on behalf of the Laborers International and the District Council.

According to the complaint, the Laborers International and many of its affiliates have been infiltrated by organized crime, demonstrated by several convictions of union representatives for various violent crimes. Mayhew has expressed an intense personal hatred for Fulks and has repeatedly expressed that he would take whatever steps were necessary to destroy Fulks's reputation. In an attempt to destroy Fulks, Mayhew has attempted to organize the non-union employees working for Mariah and other companies in which Fulks has an ownership interest.

Under the guise of union organization, Mayhew has taken various steps toward destroying Fulks' reputation in the community. He has disrupted Mariah's manufacturing facilities and dealer shows through mass picketing and leaflet distribution. Much of the information contained in the leaflets was knowingly false, including a claim that Fulks is a drug dealer and that numerous unfair labor practice charges have been filed against Mariah. Mayhew also mailed a letter to each of Mariah's dealers, wherein, under the false auspices of a "Mariah Organizing Committee," he encouraged the dealers to quit selling Mariah boats. Mayhew further stated that Mariah was committing "human rights violations" and that Mariah employees "work in hazardous conditions for little pay and are frequently belittled." In addition to this conduct, Mayhew, on behalf of Laborers International, attempted to suborn perjury from two witnesses in legal proceedings against Mariah.

As a result of the foregoing conduct, Fulks and Mariah filed this lawsuit.[1] The plaintiffs claim that the defendants committed several state torts. They also assert that the conduct amounted to a civil RICO violation, claiming perjury, mail and wire fraud, and a

---

1. From this point on, the Court will refer to Mariah and Fulks collectively as "Mariah."

violation of the Hobbs Act as the predicate acts. The defendants filed a motion to dismiss, arguing that the plaintiffs' RICO claim is preempted by federal labor law, and, in the alternative, that it fails to state a cause of action.

## II.  Motion to Dismiss Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case.  Therefore, when evaluating such a motion, the Court accepts as true the factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff.  *Zinermon*, 494 U.S. at 118, 110 S.Ct. 975;  *Colfax Corp.*, 79 F.3d at 632;  *Chaney v. Suburban Bus Div. of Regional Transp. Auth.*, 52 F.3d 623, 626–27 (7th Cir. 1995).  Under the "notice pleading" of the Federal Rules of Civil Procedure, "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  *Accord Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997); *Chaney*, 52 F.3d at 627.  Stated another way, the complaint must survive dismissal if the plaintiff could prevail under any set of facts consistent with the allegations.  *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 873 (7th Cir.), *cert. denied*, 516 U.S. 965, 116 S.Ct. 420, 133 L.Ed.2d 337 (1995).  Generally, courts will not grant a motion to dismiss merely because the complaint is vague or lacking in detail. *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985).

A complaint is not required to allege all, or any, of the facts logically entailed by the claim and the complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing.  *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir.1986).  *Accord Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir.1992).  Nonetheless, the complaint must provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99).

## III.  Analysis

Count 1 of the Plaintiffs' complaint alleges a violation of the Federal Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § 1962.  Counts 2—7 contain various state law claims.  The Defendants attack only Count 1 because, if the civil RICO charge fails, this Court no longer has subject matter jurisdiction over this case.  The defendants first argue that this federal action is preempted by the National Labor Relations Act ("NLRA") because the National Labor Relations Board ("NLRB") has exclusive jurisdiction over all labor law disputes.  Alternatively, the Defendants argue that the complaint fails to state a claim as required by RICO.

### A.  Garmon Preemption

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court announced the general rule regarding the parameters of the NLRB's jurisdiction and the NLRA's preemptive effect: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."  Id. at 245, 79 S.Ct. 773.

Although the *Garmon* doctrine seems simple enough, whether it applies to conflicts between federal statutes and the NLRA has been the subject of great debate and resulting in a conflict among the circuits.  Numerous courts, including Judge Foreman in the Southern District of Illinois, have held that the NLRA preempts RICO in whole or in part when labor disputes are involved.  *See, e.g., McDonough v. Gencorp, Inc.*, 750 F.Supp. 368 (S.D.Ill.1990) (holding that claims actionable only by virtue of the NLRA are preempted); *Butchers' Union, Local No.*

*498, United Food and Commercial Workers v. SDC Investment, Inc.,* 631 F.Supp. 1001 (E.D.Cal.1986) (holding that while NLRA does not preempt RICO claims predicated on specific Labor Management Relations Act violations, it does preempt RICO claims predicated on "generic statutes," like mail and wire fraud); *Brennan v. Chestnut,* 973 F.2d 644, 646 (8th Cir.1992) (NLRA preempted RICO claim predicated on extortion); *Tamburello v. Comm–Tract Corp.,* 67 F.3d 973, 977–78 (1st Cir.1995) (RICO claim preempted under *Garmon* where reviewing court would be forced to decide whether some portion of defendant's conduct violated federal labor laws to determine whether plaintiff had established a RICO predicate act); *Teamsters Local 372 v. Detroit Newspapers,* 956 F.Supp. 753, 761 (E.D.Mich.1997) (NLRA preempted RICO predicate acts based on threats of violence, obscenities and "garden variety" labor dispute conduct, but did not preempt "obviously illegal" predicate acts such as robbery, arson and actual violence). However, other courts have held that the NLRA does not preempt a civil RICO charge even if the predicate acts stem from a labor dispute. *See Smith v. National Steel & Shipbuilding Co.,* 125 F.3d 751, 755–56 (9th Cir.1997) ("Garmon preemption analysis is inapplicable when the NLRA potentially conflicts with another federal statute"); *United States v. International Bd. of Teamsters, Chauffeurs, Warehouseman and Helpers of America,* 948 F.2d 98, 105 (2d Cir.), vacated on other grounds sub nom. *Yellow Freight System, Inc. v. United States,* 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) ("where federal laws and policies other than the NLRA are implicated, the *Garmon* rule is frequently considered inapplicable"); *A. Terzi Productions, Inc. v. Theatrical Protective Union, Local No. One, I.A.T.S.E., AFL–CIO,* 1998 WL 190264 (S.D.N.Y. Apr. 20, 1998) (holding that the NLRA does not preempt the enforcement of RICO where both statutes independently proscribe the same conduct); *C & W Construction Co. v. Brotherhood of Carpenters and Joiners of America, Local 745, AFL–CIO,* 687 F.Supp. 1453, 1470 (D.Haw.1988) (federal labor law did not preempt RICO claim against union predicated on union's extortionate acts to compel employer to sign collective bargaining agreement); *MHC, Inc. v. International Union, United Mine Workers of America,* 685 F.Supp. 1370, 1380 (E.D.Ky.1988) ("a RICO action may proceed where the alleged predicate offenses occurred in a labor context if the acts are offenses independent of labor law").

Until recently, the district courts within the Seventh Circuit applied the *Garmon* preemption doctrine consistently. The NLRB had exclusive jurisdiction to determine whether specific conduct falls within the NLRA. "Consequently, if there [was] even a question of whether the predicate acts [were] protected or prohibited by § 7 or § 8 of the NLRA, that question render[ed] the predicate acts preempted by federal labor law." *Buck Creek Coal, Inc. v. United Workers of America,* 917 F.Supp. 601, 610 (S.D.Ind. 1995). If the predicate acts were preempted, so was the RICO claim. *See Id.; McDonough,* 750 F.Supp. at 370–71; *Brown v. Keystone Consol. Indus., Inc.,* 680 F.Supp. 1212, 1224–25 (N.D.Ill.1988). Second, to the extent the alleged conduct would not be a violation of a general law but for proscriptions of labor law, any claim based on that conduct was preempted by federal labor law. *Buck Creek,* 917 F.Supp. at 610–11; *Brown,* 680 F.Supp. at 1225.

A recent decision by the Seventh Circuit Court of Appeals muddied the water. In *United States v. Palumbo Brothers, Inc.,* 145 F.3d 850 (7th Cir.1998), the court held that the NLRA does not preempt criminal RICO charges and questioned whether it should ever be applicable when two federal statutes are at issue. In coming to its conclusion, the court focused on the purpose of both acts and reasoned that application of criminal RICO charges did not offend the stated purpose of the NLRA. *Id.* at 862. Based on the Supremacy Clause of the Constitution, the *Garmon* doctrine is intended to focus on the conflict between federal and state law, specifically "the nature of the activities which the States have sought to regulate." *Garmon,* 359 U.S. at 243, 79 S.Ct. 773. As the Seventh Circuit noted, "[a] primary justification for preemption is 'the need to avoid conflicting rules of substantive law in the labor relations area

and the desirability of leaving the development of such rules' to the NLRB." *Palumbo Bros.*, 145 F.3d 850, 861 (quoting *Vaca v. Sipes*, 386 U.S. 171, 180–81, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). "Generally, *Garmon* preemption preserves the NLRB's jurisdiction and prevents state and local regulations from interfering with labor policy." *Palumbo Bros.*, 145 F.3d 850, 861.

With this purpose in mind, the Seventh Circuit opined "a hesitation to extend *Garmon* preemption to cases involving conflicts between the NLRA and other federal statutes." *Palumbo Bros.*, 145 F.3d 850, 861. Unlike in *Garmon*, the conflict in this case, as it was in *Palumbo*, is between two federal statutes rather than one federal and one state. The Seventh Circuit explained the importance of this distinction by noting that "[t]he intersection of, or potential conflict between, federal statutes does not implicate the constitutional concerns underlying [the] *Garmon* preemption." *Id.* The court further advised that when making this determination, a court should consider "principles of statutory construction and interpretation, as well as the underlying statutory policies and congressional intentions ... because fundamentally each federal statute has equal effect under the law." *Id.* "Congressional intent behind one federal statute should not be thwarted by the application of another federal statute if it is possible to give effect to both laws." *Id.*

■ Taking into consideration the concerns expressed by the Seventh Circuit in *Palumbo*, the Court finds that application of the *Garmon* preemption should remain consistent with that previously established by the district courts in this circuit, but with one slight modification. The *Garmon* doctrine preempts other federal statutes when the underlying conduct is actionable *only* by virtue of the NLRA. Therefore, the Court must first determine the type of conflict at issue because the intersection of two federal statutes involves an analysis distinct from the traditional *Garmon* preemption. If the con-

flict is between state regulation and the NLRA, then obviously the *Garmon* doctrine is applicable subject to the existing exceptions.[2] If it involves the NLRA and another federal statute, then the *Garmon* doctrine is inapplicable as a general rule unless the underlying federal claim is illegal only by way of the NLRA. That is, if the defendant's conduct is perfectly legal but for the proscriptions of the NLRA, then those determinations of potential illegality should be left to the expertise of the NLRB. Likewise, if the conduct in question is federally chargeable independent of the NLRA (even if it is also arguably covered by the NLRA), then the *Garmon* doctrine does not apply because the two implicated federal statutes may both be given their intended purpose. *See, e.g., Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 754–57 (9th Cir.1997) (holding that *Garmon* preemption is inapplicable in cases involving the Americans with Disabilities Act); *United States v. International Brotherhood of Teamsters*, 948 F.2d 98 (2d Cir. 1991) (holding that district court had jurisdiction to consider claims under the All Writs Act); *Britt v. Grocers Supply Co., Inc.* 978 F.2d 1441, 1447 (5th Cir.1992), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993) (holding that the Age Discrimination in Employment Act was not preempted by the NLRA).

■ Pursuant to this analysis, civil RICO charges may survive *Garmon* preemption if the predicate acts are violative of federal law independent of the NLRA. However, if the predicate acts are only illegal because of the proscriptions of the NLRA, then the civil RICO charge must fail. In this case, the plaintiffs allege a RICO violation with several possible predicate acts. Although all of the underlying acts are arguably protected or prohibited by the NLRA, none of the predicate acts are premised on labor law alone. Rather, the plaintiffs allege violations of the mail and wire fraud statutes, of the Hobbs Act, and of state and federal perjury laws. Drawing all inferences in favor of the plaintiffs, the Court finds that none of the predi-

---

2. A claim is not preempted under *Garmon* if the state regulated activity is (1) merely of peripheral concern to the federal labor laws or (2) touches interests deeply rooted in local feeling and re-

sponsibility. *Cannon v. Edgar*, 33 F.3d 880, 884 (7th Cir.1994) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983)).

cate acts exist solely because of federal labor law, and, therefore, this civil RICO charge survives a *Garmon* preemption challenge.

Finally, this decision is consistent with Judge Foreman's holding in *McDonough v. Gencorp., Inc.,* 750 F.Supp. 368 (S.D.Ill.1990). Therein, the Court found that a RICO claim premised on mail fraud was preempted by *Garmon,* explaining that each of the predicate acts was "based solely upon labor law violations." *Id.* at 371. The conduct alleged in *McDonough* was a "part of one scheme to deprive the plaintiffs of democratic participation in the selection of the union." However, in the case at bar, the conduct in question is alleged to be part of a scheme to "deprive the plaintiffs of the right to pursue a lawful business" and "to mislead Mariah dealers into ceasing business with Mariah." Unlike in *McDonough* where the plaintiffs were deprived of a right created by federal labor law, the plaintiffs in this case claim they have been deprived of a right independent of federal labor law, the right to pursue a lawful business.

### B. Civil RICO Requirements

■ The defendants also argue that Count 1 should fail because it does not sufficiently allege a RICO violation. To state a claim under § 1962(c) of the RICO statute, plaintiffs must allege the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 393 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)); *McDonald v. Schencker,* 18 F.3d 491, 494 (7th Cir.1994). The defendants argue that the plaintiffs' RICO claim should be dismissed because the plaintiffs failed to plead the existence of an enterprise and a pattern of racketeering activity.

### 1. Existence of an Enterprise

■ A RICO complaint must first identify an enterprise. *Jennings v. Emry,* 910 F.2d 1434, 1440 (7th Cir.1990). An enterprise is an "ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Id.*

"An enterprise is distinct, separate, and apart from a pattern of racketeering activity: although a pattern of racketeering activity may be the means through which the enterprise interacts with society, it is not itself the enterprise, for an enterprise is defined by what it is, not what it does." *Id.* An enterprise can either be legal entities or extra-legal "associations in fact." *Id.* Both RICO enterprises can be formal or informal, but the enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity.'" *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 645 (7th Cir.1995). Therefore, an enterprise must have a structure and goals separate from the predicate acts themselves, and the individuals or entities of the enterprise must have different roles with a "common purpose of engaging in a [prohibited] course of conduct." *Id.* (quoting *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

■ In this case, Mariah claims that the union itself, along with its several district offices, is the enterprise necessary to meet the requirements of § 1962(c). The complaint states that Laborers International is a national union "whose business is the representation of employees." Like all unions, Laborers International represents various units of workers and attempts to negotiate the best possible working conditions into a collective bargaining agreement between the represented workers and their respective employers. This intended purpose is obviously separate from the predicate acts and has been sufficiently pled by Mariah. Because it is also pled that Mayhew is operating under the guise of union organization as the Regional Organizing Director, the Court finds that Mariah has sufficiently pled the existence of an enterprise.

The defendants also claim that the union and its affiliates cannot be the enterprise because they are the named defendants alleged to be acting on behalf of the enterprise. This argument is without merit. The plaintiffs allege that the union and its affiliates are the enterprise under which Mayhew is acting. Whether the union and its affiliates may be held accountable for Mayhew's conduct under the RICO statute is a wholly

separate question that was not raised by the defendants and need not be addressed.

### 2. Pattern of Racketeering

■ The defendants also assert that Mariah has failed to plead a pattern of racketeering. The Supreme Court has held that "a pattern of racketeering is established when there is proof that (1) the predicate acts are related; and (2) the acts 'amount to, or that they otherwise constitute a threat of, continuing racketeering activity.'" *McDonough*, 750 F.Supp. at 371 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Therefore, a RICO plaintiff must sufficiently plead predicate acts of racketeering, that the acts are related, and that a threat of continuing racketeering activity exists.

### a. Sufficiency of the Predicate Acts

Congress has enumerated the predicate acts which may form a basis for a RICO claim in 18 U.S.C. § 1961(1). Section 1961(1) lists five different categories of criminal offenses that could potentially constitute predicate acts. Subsection (A) provides that "any act or threat" involving a variety of criminal offenses "which is chargeable" under state law may serve as a RICO predicate. 18 U.S.C. § 1961(1)(A) (1998) (emphasis added). Subsection (B) provides that "any act which is indictable" under any of a variety of enumerated federal criminal statutes may serve as a RICO predicate. 18 U.S.C. § 1961(1)(B) (1998).

■ The defendants first challenge the plaintiffs' claim that Mayhew suborned perjury, arguing that perjury is not a predicate act under RICO. The Seventh Circuit has stated that perjury is not a predicate act for purposes of RICO. *Midwest Grinding*, 976

F.2d at 1021. Nevertheless, if the plaintiffs can establish that the perjury constituted an obstruction of justice under 18 U.S.C. § 1503, then the suborning of perjury may serve as a predicate act. *Id.* Mariah's claim that the defendants suborned perjury in violation of Illinois law is not a predicate act, but the allegation that such conduct violated 18 U.S.C. §§ 1503 and 1512, albeit quite vague, is a sufficient allegation of a predicate act.

■ The defendants also claim that Mariah cannot rely on the Hobbs Act in this circumstance to serve as a predicate act because the alleged conduct was in furtherance of a legitimate union objective.[3] Extortionate acts that would normally constitute a violation of the Hobbs Act, when undertaken in pursuit of legitimate union ends, have been found not actionable by the Supreme Court. *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973). Nonetheless, the complaint alleges that the conduct by Mayhew and the union were done with the sole objective of running Mariah out of business. Nowhere in the complaint is it alleged that the conduct in Nashville, Tennessee, had any relation to a legitimate union end and, therefore, it may be considered as a predicate act.[4]

■ The defendants also challenge the predicate acts based on 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead "all averments of fraud [with] particularity," and "this rule is of course applicable to allegations of fraud in a civil RICO complaint." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992). "Although Rule 9(b) requires that a RICO plain-

---

3. The elements of a Hobbs Act violation are: 1) obtaining property from another; 2) by wrongful use of actual or threatened violence; and 3) an effect on interstate commerce. 18 U.S.C. § 1951; *see United States v. Enmons*, 410 U.S. 396, 397, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973).

4. The Court notes that other courts have accepted the argument proffered by the defendants and have held that a Hobbs Act violation may not serve as a predicate act for RICO purposes in the labor setting. *See, e.g., Buck Creek Coal, Inc. v. United Workers of America*, 917 F.Supp. 601

(S.D.Ind.1995). In all of those case, however, the union was the recognized representative of the employees. In this case, Mayhew was acting in a union organizing effort prior to obtaining enough support to even warrant a certification vote. Further, it is unclear what conduct underlies the Hobbs Act allegation because the complaint makes few allegations regarding the issue. Accordingly, it would be improper for the Court to ignore this particular predicate act without further discovery on the issue.

tiff provide only a general outline of the alleged fraud scheme—one sufficient to reasonably notify the defendants of their purported role in the scheme—the complaint must, at minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding, Inc.*, 976 F.2d at 1020. The plaintiffs have pled only the contents of the alleged fraudulent materials. They have not asserted either the time or place of the alleged fraudulent communication. As the Seventh Circuit has noted, "the specificity standard, at minimum, requires a plaintiff to identify the time and place of the alleged predicate acts." *Id.* Accordingly, the alleged mail and wire fraud predicates are not sufficiently pled and will not be considered.[5]

### b. The Relationship Prong

■ Once a plaintiff has established that an enterprise exists and that some predicate acts have taken place, a RICO plaintiff must still establish that the predicate acts are related. The "relationship" prong, as it is called, is normally easier to satisfy than the continuity prong. The predicate acts of racketeering satisfy the relationship test if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The defendants have not suggested that the core predicate acts comprising the alleged scheme are insufficiently related to satisfy the relationship prong. Accordingly, the Court will as-

sume that they are and will proceed to the question of continuity.

### c. The Continuity Prong

■ The RICO statute itself notes only that a pattern requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). The Supreme Court has indicated that although two predicate acts of racketeering are necessary to form a pattern, two acts alone generally will not suffice. *H.J. Inc.*, 492 U.S. at 237, 109 S.Ct. 2893. This case is no different. The two remaining predicate acts, subornation of perjury and violation of the Hobbs Act, are not sufficient to establish continuity. The complaint only asserts that the acts took place over a four-month period. It does not specify when the alleged obstruction of justice took place and does not even remotely indicate how it, along with the single act in Nashville, demonstrates a threat of continuing racketeering activity. Accordingly, the complaint fails to meet the continuity prong and fails to plead a pattern of racketeering.

■ Even if the Court were to consider the insufficiently pled allegations of fraud, the complaint fails to establish continuity.[6] There are two types of continuity: 1) continuity over a closed period of time, and 2) open-ended continuity. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. Mariah does not contest that it cannot establish a closed period of continuity, but argues that it has established open-ended continuity. Open-ended continuity "may involve predicate acts occurring over a short period of time so long as there is a threat that the conduct will recur in the future." *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1998 WL 206367, *4 (7th

---

**5.** This is not a case where the specific information is unavailable to the plaintiff or in possession of the defendants. *See Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1998 WL 206367 (7th Cir. April 29, 1998). Rather, the allegedly fraudulent material was mailed and distributed to agents of Mariah, Inc., i.e. its dealers. Because Mariah attached copies of the pamphlets to the complaint, it is clear that Mariah had within its possession the information needed for the pleadings, but chose not to include it.

**6.** The Court also questions whether Mariah adequately pled indictable acts of mail fraud. To sufficiently plead an indictable act of mail fraud under 18 U.S.C. § 1341, it is up to the plaintiff to allege that: (1) the defendant has participated in a scheme to defraud and (2) the defendant has mailed or has knowingly caused another to mail a letter or other matter for the purpose of executing the scheme. *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994). Mariah claims that the defendants mailed various false statements to its dealers in an attempt to persuade them not to do business with Mariah. It is unlikely that this is sufficient to establish a scheme to defraud.

Cir. April 29, 1998); *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893 ("open-ended continuity" refers to "past conduct that by its nature projects into the future with a threat of repetition"); *see also Midwest Grinding*, 976 F.2d at 1023. Such a threat is present when: "(1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting [an] ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Corley*, 142 F.3d 1041, 1048 (citations omitted).

Mariah alleged that the predicate acts are likely to continue against it, but did not assert that mail fraud is the usual method the defendants use to operate their business, nor did it allege that the defendants operate a long-term criminal association that exists for criminal purposes. As previously noted, subornation of perjury and an isolated violation of the Hobbs Act are unlikely to continue into the future and are not sufficient to establish open-ended continuity. Even when considered along with the alleged fraudulent conduct, however, the Court finds that the open-ended continuity requirement would still not be met. There are no allegations in the complaint from which an inference can be drawn that would indicate a threat of repetition. Had Mariah pled more specific dates that demonstrated some continuity or showed that the fraudulent conduct had an established pattern of repetition, then maybe the Court could infer continuity. Although the alleged underlying motive, to run Mariah out of business, might indicate a threat of repetition, five false statements disseminated to Mariah dealers at some unknown time over a short four-month span does not demonstrate a threat of repetition. *See Midwest Grinding*, 976 F.2d at 1020 ("mail and wire fraud allegations 'are unique among predicate acts' because multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity'"); *Miller v. Gain Financial Inc.*, 995 F.2d 706, 708(7th Cir.1993) ("A single scheme which lasts only a short period does not have the requisite continuity, even if there are multiple predicate acts and victims.").

Moreover, the Seventh Circuit has repeatedly held that racketeering activity with a termination point is insufficient for open-ended continuity. "[S]chemes which have a clear and terminable goal have a natural ending point" and "therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 782 (7th Cir.1994). *See also Midwest Grinding*, 976 F.2d at 1025 (concluding that no specific threat of repetition existed because of ending point); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir.1992) (no threat of repetition because the scheme had a natural end point: the completion of the labor scheduling program); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir.1990) (no continuity because objective of fraudulent scheme was to pay defendant's loan, a natural ending point). Here, the plaintiffs allege that the purpose of the alleged fraudulent statements was to run Mariah out of business. If the defendants are successful, the natural ending point of the predicate acts would be the day Mariah is out of business. As such, there is no threat of repetition beyond this single alleged scheme and therefore no open-ended continuity.

### IV. Conclusion

For the forgoing reasons, the Court finds that the civil RICO claim is not preempted by federal labor law. The Court further finds that Mariah adequately stated the existence of an enterprise, but failed to allege a pattern of racketeering. Accordingly, the defendants' motion to dismiss Count 1 of plaintiffs' complaint is hereby GRANTED. Doc. no. 10. The Court no longer has jurisdiction over the remaining state law claims because diversity of citizenship does not exist. Accordingly, the case is dismissed.

IT IS SO ORDERED.